IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| TESLA, INC.,<br>　　　*Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 6:26-cv-0477 |
| ANGSTROM AUTOMOTIVE GROUP,<br>LLC, | §<br>§<br>§ | **JURY TRIAL DEMANDED** |
| 　　　*Defendant*. | §<br>§<br>§ | |

## PLAINTIFF TESLA, INC.'S ORIGINAL COMPLAINT

Plaintiff Tesla, Inc. ("Tesla") files this *Original Complaint* against Defendant Angstrom

Automotive Group, LLC ("Angstrom") and respectfully shows the Court the following:

## I.　　INTRODUCTION

1.　　One of the oldest rules taught from the playground is when property belongs to

someone else, you return it. Here, Tesla owns specialized manufacturing tooling in Angstrom's

possession. Tesla designed the tooling, paid for it in full, and has an unconditional contractual

right to retrieve it. Tesla demanded the return of its property. Angstrom refused. Now, this

Court's intervention is required to prevent immediate and irreparable harm to Tesla.

2.　　This case is about Angstrom's unlawful refusal to permit Tesla to retrieve its own

property—custom-manufactured tooling, jigs, dies, gauges, fixtures, molds, patterns, and related

equipment (collectively, the "Tooling")—from a manufacturing facility located in Troy, Texas

(the "Anderton Facility"). Tesla designed, commissioned, and paid for that Tooling in full, and

has a contractual, unlimited right to retrieve that Tooling from the Anderton Facility. Angstrom

is not using the Tooling and has no legitimate purpose for retaining it. Instead, Angstrom is

leveraging its possession of Tesla's property to extract commercial concessions to which it has no contractual entitlement.

3.    Angstrom is leveraging the Tooling for its own gain; in the last month alone, Angstrom has informed Tesla of its intention to shut down the Anderton facility, and then attempted to condition its continued operation of the Anderton Facility and the Tooling on Tesla's agreement to pay Angstrom $250,000 per week (on top of any payments for parts manufactured and shipped)—a unilateral demand with no basis in the parties' contract.

4.    Angstrom's refusal to allow Tesla to retrieve the Tooling also causes irreparable harm to Tesla because that Tooling is the means by which critical components for Tesla's Cybertrucks are manufactured.  As of the date of this filing, Tesla is not aware of any currently qualified alternative supplier that can produce these components in the required volume using existing tooling.  Tesla's on-hand supply of the parts produced using the Tooling is dwindling and will be exhausted shortly due to Angstrom's refusal to ship Tesla's parts currently in its possession. Without access to its own Tooling, Tesla's Cybertruck production line will be impacted, causing immediate and irreparable harm to Tesla, its reputation, its employees, its customers, and its other suppliers (and those suppliers' employees) that no monetary award can remedy.

5.    Tesla requests the Court to grant it one thing: retrieval of Tesla's Tooling.  It does not seek to litigate any other disputes between the Parties.  To support that request, Tesla asserts claims for breach of contract, anticipatory repudiation, conversion, trespass to chattels, and declaratory judgment, and seeks emergency injunctive relief in the form of a temporary restraining order and a writ of replevin.

## II.    PARTIES

6.    Tesla is a Texas corporation with its principal place of business in Austin, Texas.

7. Defendant Angstrom Automotive Group, LLC is a Michigan limited liability company. Upon information and belief, none of Angstrom's members are citizens of Texas. Angstrom can be served via its registered agent Nagesh Palakurthi at 25330 Telegraph Rd, Southfield, Michigan 48033.

## III.    JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the parties. Tesla, both through its state of incorporation and its principal place of business, is a citizen of the State of Texas. Angstrom, upon information and belief, is a citizen of the state of Michigan because of the citizenship of its members.

9. The amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, this District is where a substantial part of the property that is the subject of the action is situated, and because Angstrom is subject to personal jurisdiction here. Tesla's claims for injunctive and equitable relief are authorized by Federal Rules of Civil Procedure 64 and 65 and the equitable powers of this Court.

## IV.    FACTUAL ALLEGATIONS

### A. Tesla's Tooling At The Anderton Facility Is Critical To Tesla's Cybertruck Production Line.

11. Tesla designs, manufactures, and sells electric vehicles, energy storage systems, and related products and services. Among Tesla's groundbreaking products is the Cybertruck—a next-generation, all-electric pickup truck. Tesla currently maintains a backlog of customer orders for the Cybertruck, and most, if not all, of the Cybertrucks currently in production are already assigned to customers.

12. To build such a groundbreaking vehicle, Tesla must design and manufacture custom parts. Those parts are made using unique Tooling that is manufactured specifically to Tesla's specifications. The custom Tesla Tooling then produces parts that can only be used to build Tesla vehicles (with the relevant one here being the Cybertruck).

13. Angstrom is one of Tesla's suppliers that uses Tesla's Tooling. Pursuant to a binding contract between it and Tesla—the General Terms and Conditions for Prototype or Production Parts or Services ("Contract")—Angstrom uses Tesla's Tooling to produce some of the parts for Tesla's Cybertrucks and Model Y vehicles.

14. Under the Contract, Angstrom uses Tesla's Tooling to produce Tesla parts at Angstrom's manufacturing facility located at 222 Lely Drive, Troy, Texas 76579 (the "Anderton Facility"). Angstrom is holding Tesla's Tooling at that Anderton Facility.

15. Tesla's Tooling that Angstrom uses to manufacture these parts was developed specifically for Tesla vehicles. Neither these parts nor the Tooling used to create them are obtainable on the open market.

16. In particular, Tesla's Tooling at the Anderton Facility produces parts (the "Products") that are critical components designed (as relevant to this suit) specifically and exclusively for Tesla's Cybertruck.

17. The Tooling used to manufacture parts at the Anderton Facility under the Contract was custom-built, extremely complex, and physically substantial; the Tooling in question weighs literally tons. Moving this Tooling to new facilities is burdensome; trying to construct it from scratch is even more so. Each Tooling piece takes approximately five to six months to build.

18. Because of the Tooling's importance, and because of the difficulty of replacing it, Tesla negotiated for specific provisions in the Contract to protect its rights to the Tesla Tooling,

including the ability to seek injunctive relief and/or enter Angstrom's facilities to take possession of Tesla's property without liability in trespass.

19.     If Tesla is not allowed to recover its Tooling from the Anderton Facility, Tesla's current on-hand inventory of Products will be exhausted shortly.  Without the Tooling, Tesla will be unable to manufacture several thousand Cybertrucks that are currently in or planned for production, most, if not all, of which are already committed to customers.

20.     A parts shortage of this nature would cause irreparable harm for Tesla and others. If due to Angstrom's withholding of its Property, Tesla is unable to timely deliver preordered vehicles to its customers, Tesla will also suffer significant reputational harm, including the erosion of other supplier and customer goodwill.

21.     Angstrom is aware that the parts made by the Tooling housed at the Anderton Facility are needed to manufacture Tesla Cybertrucks.  Armed with that knowledge, Angstrom is deliberately exploiting Tesla's attempts to retrieve the Tesla Tooling to exert commercial pressure, effectively holding Tesla's own property for ransom in an effort to extract concessions to which Angstrom has no contractual or legal entitlement.

**B. Tesla Owns the Tooling in the Anderton Facility; Angstrom Has Never Owned That Tooling.**

22.     Before Angstrom owned the Anderton Facility, Tesla had a similar supplier relationship with non-party Anderton Castings, LLC ("Anderton").  Anderton was a casting and manufacturing supplier that operated out of the Anderton Facility, which assets would later be acquired by Angstrom.  On March 19, 2021, Tesla and Anderton executed "General Terms and Conditions for Prototype or Production Parts or Services" (the "Anderton Contract").

23.     The Anderton Contract is how Tesla ordered, purchased and owns every piece of Tooling that is now being held by Angstrom.

*Tesla's Original Complaint*                                                                                   **Page 5 of 18**

24.     After signing the Anderton Contract, Tesla devoted significant resources to the development of the Anderton Facility, including but not limited to identifying and developing a particular supplier for Anderton (which was necessary for Anderton to be capable of manufacturing Tesla Products), developing Anderton's capabilities to be a Tier One automotive supplier, and financing the purchase of supplies for and the building of equipment to manufacture Tesla Products.

25.     During the years between signing the Anderton Contract and Anderton or its assets being acquired by Angstrom in or around January 2025, Tesla also engaged in technical work to develop the Anderton Facility's capabilities and equipment.

26.     In addition, Tesla devoted extensive engineering resources to the Anderton Facility to develop the manufacturing process for the Cybertruck parts, including by providing review of process flow, cycle time analysis, statistical analysis, and recommendations on machine selection.

27.     Specifically, in 2022 and 2023, pursuant to the Anderton Contract, Tesla issued Purchase Orders to Anderton to manufacture the tooling that would be necessary to produce Tesla Products.  Each Tooling set was manufactured using a specific combination of die cast tools, trim dies, fixtures, cutting tools, gauge sets, pin presses, x-ray equipment, and other items.

28.     Anderton used Tesla's specifications and plans to build the custom Tooling at the Anderton Facility.

29.     When Anderton completed manufacturing each Tooling set, it issued a corresponding invoice to Tesla for payment.

30.     Anderton invoiced Tesla for all Tooling Purchase Orders, and Tesla paid each Anderton invoice in full.

31.    In summary, Anderton manufactured the Tooling to Tesla's specifications. Anderton issued invoices, and Tesla then fully paid for the Tesla Tooling.

32.    Tesla thus currently owns all Tooling in the Anderton Facility.

**C. Tesla's Contract with Angstrom Expressly Confirms Tesla's Unconditional Ownership of the Tooling and Its Absolute Right to Retrieve It at Any Time.**

33.    At the same time that Tesla was working with Anderton, it also developed a relationship with Angstrom.  On August 31, 2021, Tesla and Angstrom entered into a supplier contract similar to the Anderton Contract titled "General Terms and Conditions for Prototype or Production Parts or Services" (the "Contract").  Angstrom executed the Contract on behalf of itself and on behalf of each of its affiliates, thereby binding itself and its affiliates to the Contract's terms, conditions, and obligations.

34.    In or around January 2025, Angstrom's affiliate non-party Angstrom Aluminum Castings, LLC (collectively, "Angstrom") acquired Anderton, or its assets including the Anderton Facility.  The acquisition, which was effective as of December 31, 2024, was announced on January 3, 2025.  Angstrom did not acquire title to Tesla's Tooling, because Anderton did not have that title to sell.

### 1. Tesla Has Unconditional Right to Retrieve Its Property Under the Contract.

35.    Under the Contract, Tesla possesses the unconditional right to take possession of its Tesla Property at the Anderton Facility at any time, with or without cause and without payment of any kind.

36.    Tesla's right to possession of the Tooling is absolute. It is not conditioned on the provision of advanced notice to Angstrom, on the existence of a dispute, on Angstrom's consent, or on any payment to Angstrom.  Under the Contract, "Tesla may retake immediate possession of

Tesla Property at any time with or without cause and without payment of any kind." Contract § 11.1(e).

### 2. Because Angstrom Refuses to Allow Tesla to Retrieve the Tooling, Tesla Has an Express Right to Injunctive Relief Under the Contract.

37. Under the Contract, Angstrom's failure to allow Tesla to retrieve the Tooling expressly entitles Tesla to obtain temporary and/or permanent injunctive relief or other equitable relief to retrieve the Tooling without the necessity of posting any bond or proof of action, injury, or damage.

### 3. Under the Contract, Angstrom's Role Is That of a Bailee in Possession of Tesla's Property, and Nothing More.

38. Angstrom has never owned the Tooling. Angstrom never paid or received a single dollar toward the Tooling's design, manufacture, or acquisition. When Angstrom began to perform under the Contract at the Anderton Facility, Angstrom subjected itself to a series of obligations that confirm Angstrom's limited role as a custodian—not an owner—of Tesla's Tooling. Among other things, Angstrom agreed to: use Tesla Property exclusively for the manufacture, storage, and transport of Products for Tesla; clearly mark and identify Tesla Property as belonging to Tesla; refrain from removing Tesla Property from Seller's premises without Tesla's prior written approval; and maintain and safeguard Tesla Property in good condition.

39. Angstrom's only role with respect to the Tooling has been to hold it and use it for the manufacture of Products for Tesla until Tesla demands its return.

### D. Angstrom Abruptly Stopped Shipment of Parts and Denied Tesla's Attempt to Retrieve the Tooling.

40. Angstrom's operation of the Anderton Facility has been unsatisfactory in numerous respects.

41.     Since at least May 5, 2026, Angstrom has consistently under-shipped to Tesla's schedule releases.

42.     On July 13, 2026, Angstrom's Vice President of Finance Rajneesh Banga informed Tesla during a phone call that Angstrom intended to shut down the Anderton Facility.  He then refused to cooperate with Tesla on any exit plan for Tesla's Tooling within the facility.

43.     On July 15, 2026, based on Angstrom's under-shipments and its representation that it was shutting down the Anderton Facility coupled with Tesla's need (based on Angstrom's refusal to release parts) to retrieve the Tooling to send it to an alternative supplier, Tesla sent Angstrom a Demand for Immediate Release of Tesla Property.

44.     On July 16, 2026, Angstrom's Chief Executive Officer and President Nagesh Palakurthi confirmed that Angstrom had received Tesla's Demand, but did not respond confirming whether or not Tesla would be permitted access.

45.     On July 17, 2026, Tesla provided Angstrom with advance written notice that a Tesla retrieval team would arrive at the Anderton Facility on July 21, 2026 to take possession of Tesla's property.

46.     On July 20, 2026, Angstrom stated in writing that it would not permit Tesla to remove any Tesla Tooling from the Anderton Facility on July 21, 2026.  It also—for the first time—demanded compensation for alleged (and unspecified) modifications to the Tooling that Tesla never requested, authorized, or approved. Angstrom also attempted to condition the continued operation of the Anderton Facility on Tesla paying Angstrom $250,000.00 per week on top of any amounts paid for Purchase Orders.

47.     That same day, Tesla sent Angstrom a Notice of Property Retrieval, stating that Tesla would be retrieving the Tesla Property from the Anderton Facility on July 21, 2026.

*Tesla's Original Complaint*                                                                    **Page 9 of 18**

48.    On July 21, 2026, Tesla representatives arrived at the Anderton Facility accompanied by a law enforcement officer and a retrieval crew equipped to retrieve Tesla's property. Despite Tesla's clear ownership rights, its repeated written demands, and its advance notice of the retrieval, Angstrom's on-site personnel refused to permit the team to enter the facility, stating that Angstrom's corporate team had instructed them to deny Tesla access.

**E.  Tesla Will Suffer Irreparable Harm if it Cannot Immediately Retrieve Its Property.**

49.    If Tesla cannot retrieve its Tooling from the Anderton Facility immediately, it will be irreparably harmed.

50.    As background, before ceasing production, Angstrom used the Tesla Tooling to manufacture approximately 700 Tesla products that were scheduled to ship to Tesla on July 17, 2026; those Tesla Products are, upon information and belief, currently being held at the Anderton Facility by Angstrom.

51.    Angstrom abruptly cancelled the shipment of those 700 Tesla products and refused further deliveries required under the Contract, meaning Tesla's current on-hand supply of the Tesla products is dwindling.

52.    Against the backdrop of lowered products in its possession, the immediate access to the Tesla Tooling is necessary to avoid or at least minimize production delays; Tesla currently has several thousand Cybertrucks that are currently in or planned for production—most of which are already assigned to customers, and nearly as many employees at the ready to produce them.

53.    As noted above, there is currently a backlog of customer orders (wherein there are more customers who have ordered a Cybertruck than there are current Cybertrucks in production).

54.    A failure to return Tesla's Tooling would cause real, irreparable harm for Tesla.

## V.    CAUSES OF ACTION

### COUNT NO. ONE:
### BREACH OF CONTRACT

55.    Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

56.    On August 31, 2021, Tesla and Angstrom Automotive entered into a valid, enforceable, and binding Contract.

57.    The Contract is a valid, enforceable agreement between Tesla and Angstrom and its affiliates.  Angstrom executed the Contract on behalf of itself and its affiliates, thereby binding them—including non-party Angstrom Aluminum Castings, LLC—to the Contract's terms and obligations.

58.    Under the Contract, Tesla owns the Tooling located at the Anderton Facility and has the contractual right to retrieve its Tesla Property at any time, with or without cause and without payment of any kind.

59.    Tesla fully performed all of its obligations under the Contract, or was ready, willing, and able to perform, except to the extent its performance was prevented, hindered, or rendered impossible by Angstrom's conduct.

60.    Angstrom has materially breached the Contract by repeatedly refusing to permit Tesla to retrieve its Tooling from the Anderton Facility, including by physically turning Tesla's employees and crew away, in direct contravention of Tesla's contractual right to do so.

61.    Tesla has complied with all conditions precedent to bringing this action, or such conditions have been waived, excused, or rendered futile by Angstrom's conduct.

62.     As a direct and proximate result of Angstrom's material breaches, Tesla has suffered and continues to suffer substantial irreparable harm.  Tesla seeks an order directing Angstrom to allow Tesla to retrieve the Tooling.

## COUNT NO. TWO:
## ANTICIPATORY REPUDIATION

63.     Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

64.     An anticipatory breach occurs when a party absolutely repudiates the obligation without just excuse and the other party is damaged by the repudiation.

65.     On August 31, 2021, Tesla and Angstrom Automotive entered into a valid, enforceable, and binding Contract.

66.     The Contract is a valid, enforceable agreement between Tesla and Angstrom and its affiliates.  Angstrom executed the Contract on behalf of itself and its affiliates, thereby binding them—including non-party Angstrom Aluminum Castings, LLC—to the Contract's terms and obligations.

67.     Tesla fully performed its obligations under the Contract, or was ready, willing, and able to perform, except to the extent its performance was prevented, hindered, or rendered impossible by Angstrom's conduct.

68.     Angstrom, through its actions and inactions—including its repeated representations to Tesla—has made clear that it intends to breach the Contract by not allowing Tesla to retrieve the Tooling from the Anderton Facility.

69.     As a direct and proximate result of the anticipatory breaches of contract by Angstrom, Tesla is entitled to specific performance of the Contract—specifically, requiring Angstrom to allow Tesla to retrieve the Tooling.

70.     Tesla has complied with all conditions precedent to bringing this action, or such conditions have been waived, excused, or rendered futile by Angstrom's conduct.

71.     Tesla has been damaged and will suffer irreparable harm if it is not allowed to retrieve the Tooling from the Anderton Facility.  Tesla has no other adequate remedy at law and seeks an order directing Angstrom to allow Tesla to retrieve the Tooling.

## COUNT NO. THREE:
## CONVERSION

72.     Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

73.     Tesla owns the Tooling at the Anderton Facility.

74.     By refusing to allow Tesla to retrieve its Tooling and by keeping the Tooling at the Anderton Facility, Angstrom has assumed and is exercising unauthorized dominion and control over that property to the exclusion of Tesla's ownership rights.

75.     Tesla has made repeated requests and demands for Angstrom to return the Tooling.

76.     Despite those requests and demands, Angstrom continues to refuse to return the Tooling to Tesla.

77.     As a direct and proximate result of Angstrom's conversion of Tesla's property, Tesla has suffered and continues to suffer injury and substantial damages, including irreparable harm for which no adequate remedy at law exists, and seeks an order directing Angstrom to release the Tooling to Tesla.

## COUNT NO. FOUR:
## TRESPASS TO CHATTELS

78.     Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

79.     Tesla owns the Tooling at the Anderton Facility in Troy, Texas.

*Tesla's Original Complaint*                                                              **Page 13 of 18**

80.     Tesla sent multiple requests and demand letters to Angstrom demanding that it be allowed into the Anderton Facility to retrieve its Tooling.

81.     Tesla also attempted to possess and/or use the Tesla Tooling on July 21, 2026, by sending a representative and a crew, escorted by law enforcement, to retrieve its property.

82.     Angstrom denied Tesla access to the Tesla Tooling and otherwise prevented Tesla from removing the Tooling from the Anderton Facility on July 21, 2026 and before.

83.     Tesla had a right under the Contract to access the Anderton Facility at any time to retrieve its Tooling.

84.     Angstrom's denial and prevention deprived Tesla of the use or possession of the Tooling; Angstrom's actions to retain possession of the Tesla Tooling were wrongful.

85.     As alleged above, Tesla needs to possess the Tooling to prevent irreparable harm that will begin shortly.

86.     Angstrom's refusal prevented Tesla from possessing the Tooling for at least a week, and now more.

87.     Given the short timeline between now and when Tesla's Cybertruck supplies will run out, Angstrom's wrongful interference with Tesla's right to possess the Tooling deprived Tesla of possession for a substantial period of time.

88.     Therefore, by continuing to retain the Tesla Tooling after Tesla made a demand for it, Angstrom committed a trespass to chattels.

89.     As a direct and proximate result of Angstrom's trespass to chattels, Tesla has suffered and continues to suffer injury and substantial damages and seeks an order directing Angstrom to release the Tooling to Tesla.

## COUNT NO. FIVE:
## DECLARATORY JUDGMENT

90.     Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

91.     On August 31, 2021, Tesla and Angstrom Automotive entered into a valid, enforceable, and binding Contract.

92.     The Contract is a valid, enforceable agreement between Tesla and Angstrom and its affiliates.  Angstrom executed the Contract on behalf of itself and its affiliates, thereby binding them—including non-party Angstrom Aluminum Castings, LLC—to the Contract's terms and obligations.

93.     There is currently a dispute between the Parties regarding whether Tesla has the right under the Contract to retrieve the Tooling at the Anderton Facility.

94.     The Contract is clear that Tesla has the right to retrieve the Tooling at any time.

95.     Tesla requests that the Court declare its rights under the Contract regarding retrieval of the Tooling.

## VI.     REQUESTS FOR EMERGENCY RELIEF

96.     Because of Angstrom's conduct detailed above, Tesla is forced to seek the following emergency relief to prevent irreparable harm.

## EMERGENCY RELIEF NO. 1:
## TEMPORARY RESTRAINING ORDER

97.     Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

98.     Pursuant to Federal Rules of Civil Procedure 65, Tesla respectfully requests that this Court issue a Temporary Restraining Order (1) requiring Angstrom to immediately permit Tesla to enter the Anderton Facility and retrieve all Tesla Property, including all Tooling and

equipment owned by Tesla, and (2) prohibiting Angstrom from concealing, disposing of, damaging, destroying, or removing any Tesla Property from the Anderton Facility. Tesla will submit under separate cover a motion detailing the legal and factual basis for the temporary restraining order.

99.    If the Court does not issue a temporary restraining order, Tesla will suffer irreparable harm.

**EMERGENCY RELIEF NO. 2:**
**WRIT OF REPLEVIN/SEQUESTRATION**

100.    Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

101.    Tesla seeks a writ of replevin and sequestration pursuant to Federal Rule of Civil Procedure 64 and Texas Civil Practice and Remedies Code § 62.001 et seq. directing the immediate seizure and return to Tesla of the Tooling located at the Anderton Facility.

102.    Tesla owns the Tooling at the Anderton Facility, and Angstrom has prevented Tesla from retrieving it. There is real concern that, if the Tooling is not seized, Angstrom might move or allow the waste and degradation of the Tooling. Tesla will submit under separate cover a motion detailing the legal and factual basis for the writ of replevin and sequestration.

**VII.    DAMAGES**

103.    Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

104.    As a proximate and producing cause of all claims asserted herein, Tesla has sustained irreparable harm. It seeks specific performance, equitable injunctive relief as well as attorneys' fees and court costs.

### VIII.   JURY DEMAND

105.     Tesla requests a jury trial of all issues in this action.

### IX.   PRAYER FOR RELIEF

106.     WHEREFORE, Tesla respectfully requests that the Court:

a)     Enter a temporary restraining order that:

1) Requires Angstrom and its affiliates to cooperate in releasing the Tooling to Tesla and immediately permit Tesla access to the Anderton Facility to retrieve all Tooling and equipment and/or to release the Tooling and equipment at the Anderton Facility for retrieval by Tesla;

2) Orders Angstrom and its affiliates to not remove, conceal, sell, damage, destroy, alter, or otherwise affect the Tooling at the Anderton Facility until Tesla removes it;

b)     Set a hearing on a preliminary injunction and then, after a hearing, ordering substantially similar relief until trial;

c)     Grant a permanent injunction permanently ordering substantially similar relief; and order the same relief on a permanent basis;

d)     Enter judgment against Angstrom and in favor of Tesla for:

1)     Specific performance;

2)     Reasonable and necessary attorneys' fees and costs;

3)     Equitable relief (as described above);

4)     Costs of court; and

5)     Any additional relief in law or in equity to which Tesla may be justly or equitably entitled.

Dated: July 23, 2026

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

Marc B. Collier
Texas Bar No. 00792418
marc.collier@nortonrosefulbright.com
Ethan Glenn
Texas Bar No. 24101810
ethan.glenn@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701-4255
Telephone:    (512) 474-5201
Facsimile:    (512) 536-4598

*Counsel for Plaintiff Tesla, Inc.*