**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| TESLA, INC.,<br><br>     Plaintiff,<br><br>  v.<br><br>ANGSTROM AUTOMOTIVE<br>GROUP, LLC<br><br>     Defendant. | CIVIL ACTION NO:<br><br>6:26-cv-0477-CRW-DNM |

**DEFENDANT ANGSTROM AUTOMOTIVE GROUP, LLC'S BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6)**

Tesla wants to seize tooling and related equipment from one of its supplier's facilities in Troy, Texas, Angstrom Aluminum Castings Texas, LLC ("AAC-Texas"). To achieve that end, Tesla commenced this action against a completely different entity located in Michigan, Angstrom Automotive Group, LLC ("Angstrom Automotive"). Angstrom Automotive is and has been inactive for a few years. It does not have any facilities or offices. It does not make or sell anything. It has no connection to the tools in Troy, Texas. Tesla knows all of this, but Tesla named Angstrom Automotive instead of AAC-Texas anyway. It had to, because Tesla does not have an enforceable contract with AAC-Texas that would support its request for injunctive relief. So, Tesla had to get creative.

Tesla's complaint and its request for injunctive relief are based on the theory that an agreement executed in 2021 between Tesla and Angstrom Automotive (the "GTC") is binding on AAC-Texas because it is an "affiliate" of Angstrom Automotive. This permits Tesla to allege that it has a contractual right to the tools and has a contractual right to enter AAC-Texas's facility to get them. It permits Tesla to assert claims for breach of contract and anticipatory breach and to seek declaratory relief. Tesla's primary claims and its request for injunctive relief rely on the

premise that the GTC are binding on AAC-Texas. But California law says it is not, and California law governs the GTC.

AAC-Texas did not exist at the time Angstrom Automotive executed the agreement, and the agreement contains no explicit or forward-looking language indicating either Tesla's or Angstrom Automotive's intent to bind nonexistent, future affiliates. Tesla's attempt to include AAC-Texas as an "affiliate" under the GTC fails as a matter of law. So, Tesla's attempt to base this action on the GTC fails. Tesla's entire theory of the case fails.

Even if AAC-Texas were an "affiliate" for purposes of the GTC, Tesla cannot enforce against AAC-Texas any injunctive relief that this Court orders against Angstrom Automotive. Courts routinely refuse to enforce injunctive relief issued against one entity against a nonparty parent or affiliate entity unless the moving party shows that they are merely alter egos of the defendant entity or are in active concert or participation with the defendant entity. Tesla does not allege facts sufficient to support either conclusion, so there is no basis for lumping AAC-Texas and Angstrom Automotive together for purposes of injunctive relief.

Finally, Tesla's conversion and trespass claims fail because Angstrom Automotive is not in possession of the tools, has never been in possession of the tools, and has no authority to order AAC-Texas to release the tools to Tesla.

The Court should dismiss Tesla's complaint against Angstrom Automotive with prejudice and should award Angstrom Automotive its reasonable costs and fees for having to respond to the complaint and motions against it.

## **Allegations**

In March 2021 Tesla and Anderton Castings, LLC ("Anderton") executed "General Terms and Conditions for Prototype or Production Parts or Services." [Dkt. No. 1, Complaint, at ¶ 22]. Anderton produced parts for Tesla at Anderton's facility in Troy, Texas. [Dkt. No. 1, at ¶¶ 2, 28].

Tesla asserts without supporting evidence that it "purchased and owns every piece of Tooling" under its contract with Anderton. [Dkt. No. 1, at ¶ 23]. Despite AAC-Texas's multiple requests, Tesla has failed or refused to produce *any* documents showing that Tesla owns the Tooling and that Anderton never did.

Several months later, in August 2021, Tesla and Angstrom Automotive executed a separate set of terms and conditions, again titled "General Terms and Conditions for Prototype or Production Parts or Services." [Dkt. No. 1, at ¶ 33]. Tesla refers to this document as the "Contract" throughout the document. *Id*. It is important to reiterate this point: *the "Contract" referenced throughout Tesla's Complaint and Motion for Injunctive Relief is a 2021 document between Tesla and Angstrom Automotive.* Angstrom will refer to this document instead as the "**GTC**." Tesla does not tell the Court the purpose of the GTC, whether Angstrom Automotive produced parts for or provided services to Tesla under the document. Tesla also fails to tell the Court that Angstrom Automotive is and has been inactive for years, and that Tesla and Angstrom Automotive have not conducted business under the GTC during the same period, if ever. In its brief supporting injunctive relief Tesla asserts that California law governs the GTC.

In or around January 2025, AAC-Texas acquired Anderton and its facility. [Dkt. No. 1, at ¶ 34]. Tesla confusingly refers to AAC-Texas's facility as the "Anderton Facility" throughout its Complaint and subsequent briefing, but Anderton has not owned the facility since January 2025. [See Dkt. No. 1, at ¶ 40 for example]. AAC-Texas was formed and incorporated in Delaware in 2024. **Exhibit 1**. **This means that AAC-Texas was formed more than three years after the GTC were executed.** Tesla does not allege that it and AAC-Texas had a contract, because they never executed one. Nevertheless, AAC-Texas sold Tesla parts under a spot-buy arrangement. *See* Purchase Orders attached to Motion for Temporary Restraining Order.

In Paragraph 34 of the Complaint, Tesla suggests without any explanation that the Court should consider Angstrom Automotive and AAC-Texas collectively as "Angstrom." [Dkt. No. 1, at ¶ 34]. Tesla merely concludes that Angstrom Automotive and AAC-Texas are one and the same. It provides no basis whatsoever for disregarding the corporate form, Tesla's only allegations involving AAC-Texas are that AAC-Texas is an "affiliate non-party" of Angstrom Automotive and, as a result, is bound by the GTC. [Dkt. No. 1, at ¶¶ 33, 34, 57, 66, 91]. Based on these allegations, Tesla begins to use "Angstrom" when stating AAC-Texas's alleged acts or omissions. [See Dkt. No. 1, at ¶ 35 onward]. In other words, Tesla sued Angstrom Automotive based on AAC-Texas's alleged acts or omissions.

For example, Tesla attempted to seize the Tooling at the AAC-Texas facility in Troy, Texas, but alleges that "Angstrom" refused to permit access. [Dkt. No. 1, at ¶ 37].  Similarly, in Paragraph 39, Tesla alleges that "Angstrom's only role with respect to the Tooling has been to hold it and use it for the manufacture of Products for Tesla until Tesla demands its return." [Dkt. No. 1, at ¶ 39]. This statement is misleading. Angstrom Automotive never held or possessed the Tooling or produced parts from it. Never. Angstrom Automotive was not even active at the time AAC-Texas acquired the facility in Troy, Texas. As a result, Angstrom Automotive did not fail to ship parts to Tesla. Angstrom Automotive did not threaten to shut down AAC-Texas's facility. And Angstrom Automotive did not deny Tesla access to AAC-Texas's facility. [Dkt. No. 1, at ¶ 40-48].

Tesla nevertheless brings all its claims against Angstrom Automotive, not AAC-Texas. To put this as simply as possible: Tesla sued Angstrom Automotive for breaches of the GTC based on the actions of a separate entity and non-party that was not in existence at the time the GTC were executed and is not bound by that agreement according to California law.

4

**Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To determine whether a claim survives a Rule 12(b)(6) motion to dismiss, the court's inquiry is often limited to the facts set forth in the complaint, documents attached to the complaint and matters of which judicial notice may be taken under Federal Rule of Evidence 201. *See, e.g., Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. 2018); *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 639 n.2 (5th Cir. 2005). The Court may also consider documents attached to a defendant's motion to dismiss if those documents are referenced in the complaint and central to plaintiff's claims. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).

**Argument**

**I.  Counts One, Two and Five should be dismissed because the GTC do not apply to AAC-Texas and Angstrom Automotive as "affiliates."**

Tesla alleges that Angstrom Automotive executed the GTC "on behalf of itself and on behalf of each of its affiliates, thereby binding itself and its affiliates" to the GTC. [Dkt. No. 1, at ¶ 33]. Tesla presumes this language includes AAC-Texas and binds AAC-Texas to the GTC. Counts One, Two, and Five depend on this presumption.

A.  Under California law, the GTC are not binding on *future* affiliates.

Under California law, parties wishing to bind their future affiliates to a contract must include explicit language demonstrating that intent. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 718 (9th Cir. 2020). Absent forward-looking language—such as "any affiliates, both present and future"—courts should interpret contracts as applying to only those affiliate entities in existence at the time of contracting. *Id.*, citing *Unova, Inc. v. Acer Inc.*, 363 F.3d 1278, 1282 (Fed. Cir. 2004)

5

(interpreting California law and holding that a release from liability provision "written in the present tense … most naturally does not refer to [a party's] future parents"); and *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 997 N.Y.S.2d 339, 21 N.E.3d 1000, 1004 (2014) ("Absent explicit language demonstrating the parties' intent to bind future affiliates of the contracting parties, the term 'affiliate' includes only those affiliates in existence at the time that the contract was executed."). Texas Courts have reached similar conclusions applying New York law. *See, e.g.*, *Davidson Instruments, Inc. v. Parker-Hannifin Corp.*, No. 2:25-CV-00520, 2025 WL 3618827 (E.D. Tex. 2025).

In *Revitch*, the defendant DIRECTV, tried to compel arbitration of the claims against it under a contract between the plaintiff and DIRECTV's parent company, AT&T. 977 F.3d at 714–716. DIRECTV argued that it could assert the arbitration provision as one of AT&T's "affiliates." *Id*. The Ninth Circuit disagreed, interpreting California law as prohibiting such "piggybacking" where the entity was not an affiliate of the contracting party *at the time of contracting*. *Id*. at 716–718. California law required the Court to interpret the contract to give effect to the mutual intention of the parties as existed at the time of contracting, and to look to the reasonable expectation of the parties at that time. *Id*. The plaintiff, Revitch, signed his contract with AT&T four years prior to its acquisition of DIRECTV, so he could not have reasonably expected that DIRECTV would later be able to assert the arbitration provision in his contract with AT&T against him. *Id*. "Had the wireless services agreement stated that 'AT&T' refers to 'any affiliates, both present and future," we might arrive at a different conclusion, the Ninth Circuit noted. But it did not include such language, so the Court would not presume that Revitch and AT&T intended to bind future affiliates. *Id*.

6

Here, AAC-Texas did not exist at the time Angstrom Automotive executed the GTC, and the clause on which Tesla relies in its Motion for Temporary Restraining Order does not include the requisite explicit and forward-looking language demonstrating the parties' intent to bind future affiliates. The GTC define "Affiliate" using the present tense only, meaning "an entity, any other entity or person controlling, controlled by, or under common control with, such entity." *See* the August 2021 GTC attached to Tesla's Motion for Temporary Restraining Order. Under California law, the GTC do not include and are not binding on AAC-Texas.

B. Counts One, Two, and Five all fail to state claims because neither Angstrom Automotive nor AAC-Texas breached the GTC.

Counts One, Two, and Five all rely on an alleged breach of the GTC. Those Counts all fail to state claims for that same reason. Count One alleges that Angstrom Automotive and AAC-Texas breached the GTC by refusing to permit Tesla's entrance to the AAC-Texas facility to remove the Tools. [Dkt. No. 1, at ¶¶ 55-62].  But AAC-Texas is not bound by the GTC, and Angstrom Automotive does not own AAC-Texas's facility nor prohibit Tesla's entrance under the GTC to that facility. Neither AAC-Texas nor Angstrom committed the alleged breach.

Count Two fails for the same reason. In Count Two, Tesla alleges that Angstrom Automotive and AAC-Texas "made clear it intends to breach the [GTC] by not allowing Tesla to retrieve the Tooling from the [AAC-Texas] Facility." [Dkt. No. 1, at ¶¶ 63-71].  Here again, AAC-Texas cannot be in breach of the GTC because it is not a party bound by those Terms, and Tesla does not provide this Court with any basis for holding Angstrom Automotive responsible for AAC-Texas's separate actions. Count II fails to state a claim upon which relief can be granted.

In Count Five, Tesla asks the Court to declare Tesla's right under the GTC to enter AAC-Texas's facility "at any time" to retrieve the Tooling [Dkt. No. 1, at ¶¶ 90-95], even though AAC-

7

Texas is not bound by the GTC. Tesla has no right under the GTC to enter AAC-Texas's facility. There is no basis for granting the declaratory relief sought under Count V.

The Court should dismiss Counts One, Two, and Five with prejudice.

**II.    Even if the GTC applied to AAC-Texas, Tesla seeks to impermissibly enforce a TRO against AAC-Texas through Angstrom Automotive.**

Even if AAC-Texas were an "affiliate" for purposes of the August GTC, Tesla cannot enforce injunctive relief against AAC-Texas through Angstrom Automotive. Injunctive relief may only be enforced against a non-party that is an officer, agent, servant, employee, or attorney of a party, or where the non-party is "in active concert or participation" with a party. Fed. R. Civ. P. 65(d)(2); *Computer Sciences Corp. v. Tata Consultancy Services Ltd.*, 159 F.4th 429, 453–454 (5th Cir. 2025). Here, Tesla does not set forth any allegations that Angstrom Automotive and AAC-Texas are in cahoots, nor that one is actively participating or acting in concert with the other. As noted above, Tesla's only allegations are that they are "affiliates."

Tesla does not allege facts supporting its extraordinary request that this Court enjoin Angstrom Automotive *and* AAC-Texas. There is no basis in the Complaint for lumping AAC-Texas and Angstrom Automotive together for purposes of injunctive relief.

**III.    Tesla cannot state claims for conversion and trespass to chattels against this Defendant.**

A. Conversion

To prevail on a claim for conversion Tesla must prove that the defendant *Angstrom Automotive* unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with Tesla's rights as an owner, and that Angstrom Automotive refused to return the property. *Bell v. Bay Area RV Parks, LLC*, 722 S.W.3d 176, 211 (Tex. App.—Houston [1st Dist.] 2025, no pet. h.). Here, Tesla alleges that the collective "Angstrom" holds and possesses the Tooling and failed to permit Tesla's entrance to the AAC-

Texas facility to seize them. [Dkt. No. 1, at ¶¶ 37-48].  Tesla never alleges that *Angstrom Automotive* holds and possesses the Tooling or refused Tesla entrance to AAC-Texas's facility because it cannot do so. AAC-Texas purchased Anderton, the facility, and at least some of the tooling and other equipment housed there, not Angstrom Automotive. Tesla ordered parts from AAC-Texas, parts Tesla expected AAC-Texas to make using the Tooling. *See* Purchase Orders attached to Tesla's Motion for Temporary Restraining Order. Tesla never ordered parts from Angstrom Automotive because Angstrom Automotive never had the Tooling to make those parts.

Tesla only sued Angstrom Automotive because it needed a contractual basis to seize the Tooling from AAC-Texas, and Tesla and AAC-Texas lack such a contract. Tesla relies on its "affiliate" theory to do this. But Tesla has provided no basis for concluding that the "affiliate" theory also permits this Court to hold Angstrom Automotive liable for an "affiliate's" alleged conversion. Tesla states no facts permitting this court to disregard the corporate form between these entities. As such, Tesla fails to sufficiently allege a conversion claim against Angstrom Automotive. Count Three should be dismissed with prejudice.

B.  Trespass to Chattels

Tesla's claims under Count Four should be dismissed for the same reasons stated above. Tesla's allegation that Angstrom Automotive denied Tesla access to AAC-Texas's facility is demonstrably false, shown so by Tesla's own allegations and the documents attached to the Complaint. Angstrom Automotive is a separate entity distinct from AAC-Texas. Tesla's alleged contract with Angstrom Automotive, the GTC, predates AAC-Texas's formation and acquisition of the facility in Troy by more than three years, and it is wholly unrelated to Tesla's independent commercial relationship with AAC-Texas. Tesla has not sufficiently alleged a claim for trespass of chattels against Angstrom Automotive. Count Four should be dismissed with prejudice.

**IV. Dismissal is also appropriate Rules 12(b)(2) because this Court lacks personal jurisdiction over Angstrom Automotive.**

Federal Rule of Civil Procedure 12(b)(2) authorizes Courts to dismiss actions for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists. *Wyatt v. Kaplan,* 686 F.2d 276, 280 (5th Cir.1982). The plaintiff need not, however, establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices. *Id.* This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction. *Id.*

Tesla's Complaint fails to allege facts supporting this Court's exercise of personal jurisdiction over Angstrom Automotive. Tesla does not allege that Angstrom Automotive owns property in Texas. Tesla does not allege that Angstrom Automotive has conducted business in Texas. Tesla alleges only that the parties executed the GTC in 2021 but does not allege that they engaged in any business under the GTC. And the allegations Tesla does make are against AAC-Texas (but misleadingly referred to as "Angstrom") for that entity's acts or omissions *in Texas*. The evidence in the record shows that AAC-Texas made parts for Tesla with the Tooling, that AAC-Texas has the Tooling, and that AAC-Texas denied Tesla access to the Troy facility. As a result, Tesla fails to allege sufficient facts supporting this Court's exercise of either general or specific personal jurisdiction over Angstrom Automotive.

The Court should dismiss the Complaint with prejudice under Rule 12(b)(2) for lack of personal jurisdiction.

## <u>Conclusion</u>

Tesla admits that it only filed the Complaint to gain possession of the Tooling. [Dkt. No. 1, at ¶ 5]. Tesla further acknowledges throughout the Complaint that AAC-Texas purchased the Troy

10

facility in 2025 and that Tesla purchased parts from AAC-Texas, parts which AAC-Texas used the Tooling to make. The Tooling is at AAC-Texas's facility, not at any facility owned by Angstrom Automotive, of which there are none. Tesla only named Angstrom Automotive in this case because it lacks an enforceable contract with AAC-Texas that would allow it to obtain the relief it seeks, and Tesla is going to have a much harder time convincing a court to let it go into AAC-Texas's facility *before proving Tesla owns the Tooling* if Tesla has no contractual basis for doing so. So, Tesla sued an entity that has not engaged in business with Tesla in years and which does not (and never did) possess the Tooling, because Tesla still purportedly has a contract with that entity.

Tesla's "affiliate" theory is factually flawed and without any legal merit. AAC-Texas is not bound by the GTC, and it is not an "affiliate" for purposes of that document. If Tesla wants to sue AAC-Texas, it will have to do so under some other theory, but it cannot do so under a separate, pre-existing contract with Angstrom Automotive. And Tesla cannot sue Angstrom Automotive for AAC-Texas's alleged acts and omissions. All Tesla's claims fail for these two reasons.

Accordingly, Plaintiff Angstrom Automotive Group, LLC respectfully requests that the Court grant this Motion and dismiss the Complaint with prejudice.

Respectfully submitted,

**FRITZ BYRNE, PLLC**
402 West Seventh St
Austin, Texas 78701
Telephone: (512) 476-2020
Telecopy: (512) 477-5267

BY:    */s/ Liara A. Silva*
          Liara A. Silva
          State Bar No. 24117923
          Email: lsilva@fritzbyrne.law

11

**AND**

Todd A. Holleman (MI Bar P57699)
(Impending *Pro Hac Vice* Request)
Miller Johnson
500 Woodward Ave., Suite 3600
Detroit, MI 48226
hollemant@millerjohnson.com
313-672-6939


**ATTORNEYS FOR DEFENDANT**


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 27th day of July 2026, the foregoing motion was served upon

counsel of record through the Court's CM/ECF filing system.

<u>/s/  Liara A. Silva</u>
Liara A. Silva

12

MJ_ND 4916-0798-4577v3