Exh. 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

Tesla, Inc.,

    *Plaintiff,*

v.                             Case No. 6:26-cv-00477

Angstrom Automotive Group, LLC,

    *Defendant.*

_____/

## DECLARATION OF RAJNEESH BANGA

Rajneesh Banga states as follows:

1.    I am over the age of 18, have personal knowledge of the facts stated in this Declaration, and can competently testify to these facts if called as a witness.

2.    I am the Vice President of Finance employed by Angstrom NA, LLC.

3.    In my role, I am familiar with Tesla's commercial relationship with Angstrom Aluminum Castings Texas, LLC ("AAC-Texas"), and the facts relevant to this dispute.

4.    Angstrom Automotive Group, LLC ("AAG") does not control, is not controlled by and is not under common control with Angstrom Aluminum Castings Texas, LLC ("AAC-Texas").

5.    AAG, while still in existence, has no operations, no employees and ceased to have operational activities in 2024.

6.    Tesla has not named AAC-Texas as a defendant in this case despite AAC-Texas having possession of some, but not all of the tools, at issue in this case.

7.    AAG, the named defendant, does not have possession of any of the tools at issue in this case and does not act in concert or participate with AAC-Texas in any way. AAG has been non-operational since late 2024 before AAC-Texas was even formed in December 2024.

8.    AAC-Texas is a Delaware, LLC has as its sole member an entity named Angstrom September 2024, Holdings, LLC, which has its sole member Angstrom Group, Inc.

9.    AAC-Texas was formed in December 2024 to take over the assets of Anderton Castings, LLC ("Anderton"). It did not exist before that time.

10.    Tesla promised to purchase from Anderton certain volumes of parts to justify AAC-Texas' purchased the assets of Anderton in December 2024. Tesla promised to purchase 3,000 Cybertruck parts a week and 8,000 3DI parts a week. In reliance, AAC-Texas spent tens of millions of dollars to purchase Anderton's assets.

11.    Upon doing so AAC-Texas sent Tesla a letter dated January 3, 2025 announcing the acquisition, requesting the issuance of new purchase orders and disclosing its further investment "in delivering EDI, reducing scrap, improving OEE, improving quality concerns, and building up a 2-week safety stock on all finished goods." *See* Exh. B-1 to Tesla's Motion. AAC-Texas, in the meantime, agreed to ship products ordered by Tesla under a reservation of rights. *See id.*

12.    In addition, AAC-Texas continued to invest tens of millions in running the operations since its acquisition of Anderton in order to support the number of parts Tesla had promised to purchase.

13.    In the first three months of 2025, Tesla failed to issue weekly releases to AAC-Texas for the promised volumes.

14.    In April 2025, AAC-Texas requested that Angstrom agree to pay a higher price for the parts because it was not meeting the volumes upon which the prices were based. AAC-Texas also made a claim to Tesla for $2.8 million for the first three months due to the volume shortage.

15. Tesla agreed to a price increase on the 3DI parts with a new commitment to 5,000 parts a week and a price increase on the Cybertruck parts with a new commitment of 2,000 parts a week.

16. In reliance on the new pricing and committed quantities, AAC-Texas reduced its claim for past shortages from $2.8 million to $1.4 million. Tesla promised to pay the $1.4 million claim after AAC-Texas provided financial support for it.

17. AAC-Texas provided financial support to Tesla for its $1.4 million claim.

18. Tesla never paid the $1.4 million claim.

19. AAC-Texas requested multiple times that Tesla enter into and sign a new Production Pricing Agreement ("PPA") and submitted several drafts while negotiating, but Tesla refused to sign a new PPA.

20. AAC-Texas continued to produce and ship the parts Tesla ordered, but Tesla never issued weekly releases even for the new reduced quantities agreed to in April 2025.

21. Tesla's failure to order the quantities it promised and AAC-Texas relied on caused AAC-Texas to incur losses on the Cybertruck of $3.75 million through June 2026 and on the 3DI of $8.75 million. Based on the low volumes Tesla is ordering, AAC-Texas anticipates further losses of approximately $8 million on the Cybertruck parts through the end of the program in December 2029 and an ongoing monthly loss of $425,000 on the 3DI program.

22. Tesla's claim that AAC-Texas has had quality problems is false at Tesla's own supplier "scorecard" for AAC-Texas has been at 99/100. *See* Exh. A hereto.

23. Tesla overstates the demand for the Cyber truck, which is clear when it has only ordered less than 15-20% of the promised and capacitized volumes.

24. In June 2026, with incredible dollar losses continuing to mount, the Tesla business could no longer be supported without Tesla paying what it had promised to cover the shortfalls and then increasing its orders to cover AAC-Texas costs going forward.

25. AAC-Texas continued discussions with Tesla, and Tesla indicated it wanted to reach an amicable resolution while at same time sending a threatening letter arguing AAC-Texas had breached agreements.

26. In fact, there is no written agreement between AAC-Texas and Tesla by which Tesla commits to actually buy any parts from AAC-Texas let alone the quantities promised. Without a quantity commitment or term, the "agreements" relied on Tesla in its motion are not enforceable.

27. AAC-Texas responded by email rejecting Tesla's allegation that it was in default and providing context and information to support its position that it was actually Tesla that had breached its commitments and obligations to AAC-Texas. *See* Exh. B (June 26, 2026 Email).

28. On July 15, 2026, Tesla demanded access to the AAC-Texas facility to locate and take what it claimed to be its tools.

29. Telsa failed to identify what it claimed to be its tools despite AAC-Texas requesting that they be identified.

30. In response to Tesla's demand to take the unidentified tools, AAC-Texas offered several commercially reasonable options to resolve the current dispute:

    a. Proposal 1

        i. Resume shipments of all ordered parts

        ii. Tesla pay all current accounts receivable owed.

        iii. Current prices continued but payment is COD.

        iv. Reservation of all rights

   b. Proposal 2

        i. Tesla commits to 8,000 a week for the 3DI parts

        ii. New pricing for Cybertruck parts at a revised volume

        iii. PPC satisfactory resolution

        iv. New PPA with minimum volume commitments and SOP/EOP dates

        v. Resolution/settlement of past damages claim or reservation of rights.

   c. Proposal 3 – sale of plant to Tesla.

31. Because Tesla did not identify the tooling it claimed, the unreasonable short timeframe it had demanded compliance with and the unresolved commercial issues of payment, AAC-Texas could not simply comply with what Tesla was demanding.

32. Tesla could avoid any production stoppage by accepting any one of the proposals AAC-Texas offered.

33. Without providing any further information, Tesla rejected AAC-Texas' proposals.

34. To protect itself AAC-Texas then filed suit in Bell County District Court asserting claims for promissory estoppel and declaratory relief, including that Tesla is not entitled to the relief it is seeking here. *See* Exh. C (complaint).

35. Tesla can easily avoid its alleged damages if it simply pays to AAC-Texas what it owes.

36. AAC-Texas can and will continue to produce the parts Tesla orders.

37. The parties can continue to negotiate a resolution to the larger commercial issues.

38. If Tesla feels it has paid funds that AAC-Texas is not entitled, Tesla can assert those monetary claims in the pending Bell County case as a counterclaim or, here, if it names the proper party, which it has not done.

39. Instead, Tesla, in the ultimate move of "bad faith" now wants to seize tools and equipment, albeit through an entity that does not have them, so that AAC-Texas can never be made whole.

40. Tesla's motion overstates its alleged harm and there is no immediate or irreparable harm as to the 3DI parts that are the first four tools/parts referenced in Tesla's motion. Tesla had stated it has three other suppliers for those parts, and it does not actually need AAC-Texas for them. Tesla has not even picked up 1,400 such parts that it ordered and AAC-Texas produced in April 2026.

41. Regardless, two of the four of those tools/parts -- identified Tools three and four in Tesla's motion -- are not even at AAC-Texas. Tool 3 is located in North Carolina at an entirely different and separate company named Enforge, LLC, and Tool 4 is located in Chicago, IL at another entirely different and separate company named Precision Plating Company.

42. Tesla's motion includes several inaccurate assertions about the tools at issue in this dispute, which suggest that the parties both require time to confirm ownership and location of each tool and piece of equipment.

43. Tesla also fails to recognize sub-assemblies and related parts that do may or may not belong to Tesla.

44. The "Contract" attached as Exhibit A-1 to Mr. Bandstra's declaration is simply Tesla's General Terms and Conditions. It is impossible for Tesla and AAC to have entered into a contact on August 31, 2021 governing AAC's manufacture and supply of components for Tesla

because AAC did not even exist then. There is no enforceable written contract that governs the relationship between Tesla and AAC that incorporates Tesla's terms and conditions and applies to the tools at issue.

45.    AAC-Texas' facility contains tools, equipment, and parts belonging to other customers, and AAC-Texas is subject to several non-disclosure agreements, which do not allow Tesla representatives unfettered access to the facility.

46.    The tools that are the subject of Tesla's motion weigh tons and would each require up to five hours and dedicated personnel to unload them from machines and prepare them for delivery to or taking by Tesla.

I declare under penalty of perjury that the above statements are true and correct to the best of my knowledge.

Dated: July 27, 2026

Rajneesh Banga