# Exhibit 1-C

Filed 7/23/2026 1:18 PM
Joanna Staton, District Clerk
District Court - Bell County, TX
by MaryBeth DeLeon  , Deputy

CAUSE NO. 26DCV363291

| | | |
|---|---|---|
| ANGSTROM ALUMINUM CASTINGS TEXAS, LLC | § § § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | | |
| vs. | | 146th _____ JUDICIAL DISTRICT |
| TESLA, INC.        § | | |
| Defendant. | § | BELL COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Angstrom Aluminum Castings Texas, LLC ("Angstrom"), files this Original Petition against Defendant Tesla, Inc. ("Tesla"), and for its causes of action would respectfully show the Court as follows:

### I.    DISCOVERY CONTROL PLAN

1.    Plaintiff intends that discovery be conducted under Level 3 of Rule 190 of the Texas Rules of Civil Procedure.

### II.    PARTIES

2.    Plaintiff Angstrom Aluminum Castings Texas, LLC is a Delaware limited liability company doing business from a manufacturing facility located at 222 Lely Dr., Troy, TX 76579.

3.    Defendant Tesla, Inc. is a Delaware corporation with its principal place of business at 1 Tesla Road, Austin, Texas 78725 and may be served through its registered agent, C T Corporation, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

### III.    STATEMENT OF RELIEF SOUGHT

4.    Plaintiff seeks monetary relief in an amount over $1,000,000. The damages sought are within the jurisdictional limits of the Court.

## IV.    JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

6.    Venue is proper in Bell County, Texas because all or a substantial part of the events giving rise to this action occurred in Texas, Defendant maintains its principal place of business in Texas, and Defendant is subject to personal jurisdiction in this State.

## V.    FACTUAL ALLEGATIONS

7.    Plaintiff is a manufacturer of automotive parts.

8.    This action arises from Tesla's promise that Angstrom would receive a multi-year production program involving the purchase of specified quantities of component parts and Angstrom's reasonable reliance upon those promises.

9.    Tesla knew and intended that Angstrom would rely upon those representations by making substantial capital expenditures necessary to develop manufacturing capability for Tesla's programs.

10.    In reliance upon Tesla's promises and representations, Angstrom invested substantial sums in engineering, facilities, manufacturing equipment, tooling, production capacity, personnel, fixtures, launch activities, and related manufacturing resources.

11.    Tesla subsequently failed to purchase the quantities of parts that it had represented would be purchased over the life of the program.

12.    As a result, Angstrom was unable to recover its capital expenditures through the quoted piece prices, which were based upon the anticipated production volumes and the amortization of those investments over the expected life of the program.

13.    Angstrom has suffered substantial damages as a direct result of Tesla's conduct.

2

14. During the parties' relationship, Tesla issued purchase orders that referenced Tesla's General Terms and Conditions.

15. Those purchase orders expressly provided that Tesla was under no obligation to issue purchase orders or releases and further provided that any quantities stated therein were provided for planning purposes only, were not volume guarantees, and were binding only in limited circumstances not applicable here.

16. Tesla, therefore, expressly declined to commit to purchasing any definite or specific quantity of parts from Angstrom.

17. Notwithstanding Tesla's refusal to commit to purchasing any definite quantity of parts, Tesla now contends that its General Terms and Conditions (GTC") govern the parties' relationship and provide Tesla with contractual rights concerning tooling and equipment.

18. Tesla, in reliance on its GTC, has demanded access to Angstrom's manufacturing facility for the purpose of taking possession of tooling and equipment that Tesla claims to own.

19. Tesla has failed and refused to identify with reasonable specificity the tooling and equipment it claims to own.

20. Tesla has likewise failed and refused to establish that it paid for all tooling and equipment that it claims to own.

21. Certain tooling and equipment were acquired by Angstrom in anticipation of Tesla's production requirements. Angstrom disputes whether Tesla has acquired ownership of such tooling because, among other reasons, Tesla has not established payment for the tooling and ownership of the tooling remains disputed.

22. Tesla nevertheless continues to assert that it is contractually entitled to enter Angstrom's premises and remove tooling and equipment based upon provisions contained in Tesla's GTC.

23. An actual and justiciable controversy therefore exists between the parties regarding:

    a.    ownership of the disputed tooling and equipment;

    b.    Tesla's right, if any, to immediate possession of such tooling and equipment;

    c.    whether Tesla is entitled to enter Angstrom's facility to remove tooling and equipment; and

    d.    whether Tesla's General Terms and Conditions constitute enforceable contractual obligations governing the parties' relationship.

24. Plaintiff seeks declaratory relief to resolve these present and actual controversies before Tesla undertakes self-help or otherwise interferes with Angstrom's possession of disputed tooling and equipment and operations to manufacture parts Tesla promised to purchase.

25. Tesla engaged Angstrom to develop and manufacture component parts for Tesla vehicles.

26. Tesla represented that Angstrom would receive a multi-year production program involving specified production quantities.

27. Tesla knew those representations were material because Angstrom's pricing depended upon anticipated production volumes sufficient to recover substantial capital investments.

28. Tesla knew Angstrom would incur substantial engineering, launch, staffing, manufacturing, tooling, validation, and production readiness costs before production could begin.

29. Tesla further knew that Angstrom's quoted piece prices assumed recovery of those investments through the anticipated production volumes over the life of the program.

30. Tesla reasonably expected Angstrom to rely upon those representations.

31. In reliance upon Tesla's promises and representations, Angstrom developed manufacturing processes, committed manufacturing capacity, acquired tooling and equipment, incurred engineering and launch costs, dedicated personnel, and made substantial capital expenditures necessary to support Tesla's anticipated production requirements.

32. Angstrom would not have incurred those expenditures absent Tesla's promises concerning anticipated production volumes.

33. Angstrom fully performed by developing the required manufacturing capability and remains ready, willing, and able to supply Tesla's production requirements.

34. Tesla thereafter failed to purchase the quantities of parts it represented would be purchased although Angstrom supplied the minimal parts Tesla did order and received a 99/100 on its supplier scorecard from Tesla for 2026.

35. Tesla's failure prevented Angstrom from recovering its substantial investments through the agreed piece prices.

36. Angstrom has sustained substantial reliance damages as a direct and foreseeable result of Tesla's conduct.

37. Tesla's attempt to now take equipment and tooling from Angstrom is the ultimate bad faith tactic to eliminate any ability by Angstrom to recover its capital expenses and other costs through the manufacture and sale of parts to Tesla.

## COUNT I
## PROMISSORY ESTOPPEL

38. Plaintiff incorporates by reference Paragraphs 1 through 37 as though fully set forth herein.

39. Tesla made clear and definite promises and representations to Angstrom that Angstrom would receive a multi-year production program involving specified production quantities, and the prices for those parts were set in reliance on Tesla's promises and representations.

40. Tesla made those promises intending and expecting that Angstrom would rely upon them in determining whether to undertake the program and invest substantial sums necessary to manufacture Tesla's parts.

41. Tesla knew that Angstrom would incur substantial engineering expenses, launch costs, manufacturing costs, tooling costs, equipment purchases, capital expenditures, staffing expenses, and production readiness costs in reliance upon Tesla's promises.

42. Angstrom reasonably and foreseeably relied upon Tesla's promises by making substantial investments and committing manufacturing resources necessary to support Tesla's anticipated production requirements.

43. Angstrom materially changed its position in reliance upon Tesla's promises.

44. Tesla thereafter failed to issue purchase orders for the production quantities that it represented Angstrom would receive.

45. As a direct and proximate result of Tesla's failure to honor its promises, Angstrom was unable to recover its substantial investments through the quoted piece prices that had been calculated based upon the anticipated production volumes.

46. Angstrom has suffered substantial reliance damages as a result of its reasonable reliance upon Tesla's promises.

47. Enforcement of Tesla's promises through an award of reliance damages is necessary to avoid injustice.

48. Plaintiff seeks recovery of its reliance damages, including unrecovered capital expenditures, engineering expenses, tooling costs, equipment costs, launch costs, staffing costs, manufacturing investments, and other expenditures incurred in reliance upon Tesla's promises in amounts to be proven at trial in excess of $2.9 million from January to March 2026 alone and over $9 million in 2025.

## COUNT II
## DECLARATORY JUDGMENT
### (Ownership and Possession of Tooling and Equipment)

49. Plaintiff incorporates by reference Paragraphs 1 through 48 as though fully set forth herein.

50. This claim is brought pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

51. An actual, present, and justiciable controversy exists between the parties concerning ownership of tooling and equipment used or acquired in connection with Tesla's manufacturing programs.

52. Tesla has asserted that it owns certain tooling and equipment located at Angstrom's manufacturing facility.

53. Tesla has demanded access to Angstrom's facility for the purpose of taking possession of such tooling and equipment.

54. Angstrom disputes Tesla's claims of ownership and has asked for specific proof of Tesla's ownership.

55. Tesla has failed and refused to identify with reasonable specificity the tooling and equipment it contends it owns.

56. Tesla has further failed and refused to establish that it has paid for all tooling and equipment that it claims to own.

57. Angstrom disputes Tesla's claimed ownership of certain tooling and equipment because, among other reasons, Tesla has not established payment for such tooling or otherwise demonstrated its ownership thereof. There are several examples of situations where Tesla directed Angstrom to purchase equipment, which Angstrom did, but Tesla never verified or approved that equipment for production (PPAP) and, thus, on information and belief, Tesla never paid for the equipment.

58. Until ownership of the disputed tooling and equipment is determined, Tesla is not entitled to take possession of such tooling or equipment or to enter Angstrom's premises for that purpose.

59. The parties possess adverse legal interests regarding ownership and possession of the disputed tooling and equipment, and those interests are real and immediate rather than hypothetical.

60. A judicial declaration is necessary to resolve the uncertainty and controversy between the parties.

Plaintiff therefore requests that the Court declare:

A.    that an actual controversy exists concerning ownership of the disputed tooling and equipment;

B.     that Tesla bears the burden of establishing its ownership of any tooling and equipment it claims;

C.     that Tesla is not entitled to possession of disputed tooling and equipment unless and until it establishes its ownership thereof;

D.     that Tesla is not entitled to enter Angstrom's manufacturing facility for the purpose of removing disputed tooling and equipment unless and until Tesla establishes its ownership rights;

E.     that the parties' respective ownership interests in the disputed tooling and equipment be determined by the Court; and

F.     such other declarations as the Court determines are proper and just.

**COUNT III**
**DECLARATORY JUDGMENT**
**(Tesla's General Terms and Conditions)**

61.    Plaintiff incorporates by reference Paragraphs 1 through 60 as though fully set forth herein.

62.    This claim is brought pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code.

63.    There is no overarching written supply agreement between the parties.

64.    Tesla contends that its General Terms and Conditions referenced by its purchase orders govern the parties' relationship and provide Tesla with contractual rights concerning, among other things, ownership of tooling and equipment and Tesla's alleged right to enter Angstrom's facility to take possession of such tooling and equipment.

65.    Tesla's purchase orders expressly provided that nothing therein required Tesla to issue any purchase order or release to Angstrom.

9

66. The purchase orders further provided that any quantities referenced therein were provided for planning purposes only, were not volume guarantees, and would become binding only under limited circumstances not applicable to the parties' dealings.

67. Tesla therefore expressly declined to commit itself to purchasing any definite or specific quantity of parts from Angstrom.

68. Angstrom contends that Tesla's purchase orders did not create enforceable long-term supply agreements obligating Tesla to purchase the production volumes represented during the parties' negotiations because they expressly deny any obligation to purchase anything, and Tesla's conduct has demonstrated that it has not and will not purchase the volumes it promised to obtain the pricing that it did from Angstrom.

69. Angstrom further contends that because Tesla's purchase orders did not create enforceable contractual obligations regarding production quantities, Tesla's General Terms and Conditions were not incorporated into an enforceable agreement governing the parties' relationship in the manner asserted by Tesla.

70. Tesla nevertheless relies upon its General Terms and Conditions as the basis for asserting contractual rights to enter Angstrom's facility and take possession of tooling and equipment.

71. The parties therefore possess adverse legal interests concerning whether Tesla's General Terms and Conditions govern their relationship and whether Tesla may rely upon those provisions to assert ownership or possessory rights in tooling and equipment.

72. An actual, present, and justiciable controversy exists between the parties requiring judicial resolution.

Plaintiff therefore requests that the Court declare:

10

A.    that an actual controversy exists concerning whether Tesla's General Terms and Conditions govern the parties' relationship;

B.    that Tesla's purchase orders did not obligate Tesla to purchase any definite quantity of parts;

C.    that Tesla is not entitled to rely upon its General Terms and Conditions as the basis for asserting contractual rights unless Tesla establishes the existence of an enforceable agreement incorporating those provisions;

D.    that Tesla is not entitled to rely upon its General Terms and Conditions as authority to enter Angstrom's facility or remove disputed tooling and equipment unless and until Tesla establishes that those terms govern the parties' relationship; and

E.    such other and further declaratory relief as the Court determines is proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Angstrom Aluminum Castings Texas, LLC respectfully requests that Defendant Tesla, Inc. be cited to appear and answer, and that upon final trial the Court enter judgment in Plaintiff's favor and award:

A.    Reliance damages recoverable under Plaintiff's claim for promissory estoppel;

B.    A declaration determining the parties' respective rights concerning the ownership and possession of the disputed tooling and equipment;

C.    A declaration determining whether Tesla's General Terms and Conditions govern the parties' relationship and whether Tesla may rely upon those provisions to assert rights concerning the disputed tooling and equipment;

D.    Reasonable and necessary attorney's fees and costs to the extent permitted by applicable law, including the Texas Uniform Declaratory Judgments Act;

E.    Prejudgment and post-judgment interest as allowed by law;

11

F.    Costs of court; and

G.    Such other and further legal and equitable relief to which Plaintiff may be justly

entitled.

Respectfully submitted,

**FRITZ BYRNE, PLLC**
402 West 7th Street
Austin, Texas 78701
Telephone: (512) 476-2020
Fax: (512) 477-5267

BY:    */s/ Liara A. Silva*
       Liara A. Silva
       State Bar No. 24117923
       Email: lsilva@fritzbyrne.law

**AND**

Todd A. Holleman (MI Bar P57699)
(Impending *Pro Hac Vice* Request)
Miller Johnson
500 Woodward Ave., Suite 3600
Detroit, MI 48226
Email: hollemant@millerjohnson.com
Telephone: (313) 672-6939

**ATTORNEYS FOR PLAINTIFF**

12

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

April Morton on behalf of Liara Silva
Bar No. 24117923
amorton@fritzbyrne.law
Envelope ID: 117738184
Filing Code Description: Petition
Filing Description: PLAINTIFF'S ORIGINAL PETITION BY SILVA
Status as of 7/27/2026 8:22 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Todd A. Holleman | | hollemant@millerjohnson.com | 7/23/2026 1:18:41 PM | NOT SENT |
| Brenda Damron | | bdamron@fritzbyrne.law | 7/23/2026 1:18:41 PM | NOT SENT |
| Eaton Sargent | | esargent@fritzbyrne.law | 7/23/2026 1:18:41 PM | NOT SENT |
| April Morton | | amorton@fritzbyrne.law | 7/23/2026 1:18:41 PM | NOT SENT |
| Christine EBurgess | | cburgess@fritzbyrne.law | 7/23/2026 1:18:41 PM | NOT SENT |
| Keri Anderson | | kanderson@fritzbyrne.law | 7/23/2026 1:18:41 PM | NOT SENT |
| Liara Silva | | lsilva@fritzbyrne.law | 7/23/2026 1:18:41 PM | NOT SENT |