IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| Tesla, Inc., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 6:26-cv-00477-CRW-DNM |
| | § | |
| Angstrom Automotive Group, LLC, | § | |
| | § | |
| *Defendant.* | § | |

**REPLY TO DEFENDANT ANGSTROM AUTOMOTIVE GROUP, LLC'S RESPONSE
TO PLAINTIFF'S MOTION FOR EXPEDITED HEARING**

Plaintiff Tesla, Inc. ("Tesla") files this Reply in support of its Motion for Expedited Hearing (Dkt. No. 3) and in opposition to Defendant Angstrom Automotive Group, LLC's ("Angstrom") Response (Dkt. No. 6).

## I. INTRODUCTION

Angstrom's arguments raised in its Response amount to an attempt to play a corporate shell game and do not warrant delaying the Court's resolution of Tesla's *Motion for Temporary Restraining Order and Writ of Replevin/Sequestration* (Dkt. No. 4) (the "Emergency Relief Motion"). Tesla faces imminent, substantial harm from lack of access to its Tooling.[1] Angstrom, as evidenced by its filing of a response to the Emergency Relief Motion, has had a fair opportunity to respond. The Court can now resolve Tesla's Emergency Relief Motion on an expedited basis. If the Court would find oral argument on Tesla's Emergency Relief Motion helpful to resolving the motion, Tesla asks that the Court grant its motion and set an expedited hearing tomorrow, July 28, 2026, or as soon as the Court is available, for the following reasons.

---

[1] Unless otherwise stated, all capitalized terms have the meaning given to them in Tesla's prior pleadings and the governing contract. *See generally* Dkt. No. 4, Ex. A-1.

*Tesla's Reply in Support of Motion for Expedited Hearing*　　　　　　　　**Page 1 of 7**

## II.    ARGUMENT

Angstrom's Response reveals that Angstrom does not deny much of what Tesla has alleged and argued in this lawsuit.  For instance, Angstrom's Response does not deny that Tesla paid for and owns the Tooling at issue.  It does not deny that most, if not all, of that Tooling is currently located at the Anderton Facility in this District, or that it controls access to that facility.  It also doesn't deny that the Contract requires Angstrom to immediately release the Tooling to Tesla upon request and to allow Tesla access to its facilities to effectuate such a request, or that it stopped using the Tooling to produce parts, or that it told Tesla that the Anderton Facility would in fact be closing shortly.  It also doesn't deny that Tesla attempted to recover the Tooling after learning production had stopped and the facility would close and that Angstrom refused—multiple times, including by denying Tesla physical access to the Anderton Facility—to allow Tesla to do so unless other demands, such as a payment of $250,000 a week (above and beyond any payments for produced parts) were met.  It also doesn't deny that its executives negotiated the Tooling issue with Tesla for weeks without any hint that Angstrom might not control the Tooling or that Tesla did not have a right to recover it under the Contract.  Instead, Angstrom's Response attempts to shift the Court's focus to matters that should not impact the Court's resolution of Tesla's Emergency Relief Motion.  Instead of engaging in Angstrom's shell game, the Court need only focus on the following.

### A.  Angstrom does not oppose expediting Tesla's Emergency Relief Motion.

Angstrom is not opposed to the Court granting Tesla's motion and expediting the hearing on Tesla's motion (*see* Dkt. No. 6 at 1); the only question is when the hearing should be set. Respectfully, the answer is ***tomorrow***.  Angstrom has filed its Response.  *See* Dkt. No. 10.  Its request for more time to prepare and respond is therefore moot, and Tesla's Emergency Relief Motion is ripe for resolution.

**B. Angstrom does not deny that Angstrom Aluminum Castings Texas, LLC or Enforge, LLC are Affiliates.**

Angstrom's argument that Tesla "has sued the wrong corporate entity" is also a red herring. *See* Dkt. No. 6 at 1. Angstrom argues Angstrom Aluminum Castings Texas, LLC and Enforge, LLC ("Enforge") possess Tesla's Tooling, not Angstrom, and that those two entities are "non-parties and separate legal entities." But Angstrom carefully does ***not*** claim that those entities are not Angstrom's Affiliates (because they are). And Angstrom does not deny that the Contract expressly and repeatedly binds and obligates Angstrom Automotive Group, LLC—the entity before the Court—on behalf of Angstrom's ***Affiliates***:

- Angstrom executed the Contract on behalf of itself and its affiliates. *See* Dkt. 4, Ex. A-1 at 23.

- The Contract broadly defines "Affiliates" to include entities controlling, controlled by, or under common control and defines control to refer to the power to direct or cause the direction of the management or operations of the entity. *See* Dkt. 4, Ex. A-1 § 21.1.

- The Contract explicitly states that Angstrom will be liable for the obligations of the Contract and Angstrom has the right and authority to bind its Affiliates. *See* Dkt. 4, Ex. A-1 § 6.1(b).

Angstrom's Response claims Angstrom Aluminum Castings Texas, LLC and Enforge actually have possession of the Tooling. If true, the question is whether Angstrom shares some form of control with these two "Affiliates" entities. The evidence shows that they are. Angstrom's arguments that the Contract is not enforceable against other Angstrom entities or that it does not have the ability to release the Tooling is also belied by its own actions; for weeks, Angstrom executives—using "@angstrom-usa.com" email addresses—have communicated with Tesla about these issues, knowing full well where the Tooling was and which facility was involved. *See, e.g.*, Dkt. No. 4; Ex. B-3. And in all those business communications, Angstrom did not dispute that the Contract controlled the Tooling, that the Contract gave Tesla the right to recover it, or that those

contractual rights were limited; instead, Angstrom only disputed which Tooling Tesla should recover and whether Tesla should pay other amounts Angstrom asserted were owed before it recovered the Tooling.  *See* Dkt. No. 4; Ex. B-3 at 4; *see also* Dkt. No. 4, Ex. B-4 at 3.

Here, the Contract controls because all three entities are subject to control.  In particular, Nagesh Palakurthi, the President and Chief Executive Officer of Angstrom, has been deeply involved in these issues from the beginning, including refusing—both orally and in writing—to return the Tooling.  Dkt. No. 4; Ex. B, ¶ 13; Ex. B-3.  Mr. Palakurthi is at the center of the Angstrom web and has appeared on corporate formation and filing documents as a controlling individual for *all three* entities at issue here.  *See* Dkt. No. 4, Ex. C (listed as the "Governing Person" on Angstrom Aluminum Castings Texas, LLC's "Application for Registration of a Foreign Limited Liability Company"); *see also* Dkt. No. 4, Ex. D (listed as the Manager of Angstrom Automotive Group, LLC's "Certificate of Amendment"); *see also* Ex. 1 to this Reply (listed as the sole Manager of Enforge on its "Limited Liability Company Annual Report").  Mr. Palakurthi clearly exercises some control over all three entities, and it also appears that Defendant Angstrom Automotive Group, LLC is the parent of at least one of the other two entities.  *See, e.g.*, "Auto Manufacturing Supplier Selects Stanly County for Expansion" N.C. DEP'T OF COMMERCE, https://www.commerce.nc.gov/news/press-releases/auto-manufacturing-supplier-selects-stanly-county-expansion ("Enforge is a subsidiary of Angstrom Automotive Group, LLC located in Michigan.") (last visited July 27, 2026).

**C. Angstrom does not deny that most, if not all, of the relevant Tooling is at the Anderton Facility.**

The Tooling that Tesla seeks to recover is currently at the Anderton Facility.  Angstrom's Response does not deny that Tesla's own employees have seen the Tooling there or that Angstrom has—up until the last few weeks—used the Tooling to produce parts at the Anderton Facility for

Tesla (as Tesla has detailed in its papers, the only equipment that can produce those parts is the Tooling; because the parts are being produced at the Anderton Facility, Tesla (and the Court) know the Tooling is there). *See* Dkt. No. 4, Ex. A ¶¶ 16, 42. To be clear, Tesla is not seeking Tooling from Enforge's North Carolina facility. Angstrom's reference to Enforge is thus merely a distraction from the relief actually sought. The Tooling Tesla seeks to recover and the Anderton Facility are both controlled by Angstrom, regardless of any corporate fiction, and are located within this District. And if the Tooling is not in this District—if Angstrom has started to or is attempting to move the Tooling from the Anderton Facility—that is another potential breach of the Contract (*see* Dkt. No. 4, Ex. A §§ 14.1, 14.2) and is simply more evidence that the Court needs to intervene now.

### D. Delaying the hearing will cause Tesla irreparable harm.

The Court should also not delay the hearing based on Angstrom's conclusory arguments that Tesla's harm is merely "monetary" and "capable of being addressed through an award of monetary damages." *See* Dkt. No. 6 at 2. This is bald attorney argument that is also factually incorrect. As set forth in detail in Tesla's Emergency Relief Motion, Tesla's harm is irreparable and cannot be remedied through monetary damages alone. *See* Dkt. 4, Ex. A ¶¶ 40-73. In particular, along with the other irreparable harm Tesla details in its Emergency Relief Motion, the fact that the Tooling is unique should weigh heavily in favor of expediting resolution. Courts deciding the irreparable harm element of a temporary restraining order have recognized that the deprivation of unique, one-of-a-kind personal property can constitute irreparable harm not compensable by monetary damages. *See Holmes v. Scan-Shipping, Inc.*, No. CA H-16-1945, 2016 WL 9331116, at *1 (S.D. Tex. July 1, 2016) (finding irreparable harm and granting temporary restraining order because, "due to the unique nature of the Plaintiffs' personal property in

possession of Defendant . . . the items cannot be compensated fully by monetary damages alone, and cannot be replaced once destroyed."). Here, the Tooling was custom-built at the Anderton Facility. Tesla would need, with an average production time, at least five months to build replacements, and no other Tesla supplier has this Tooling available at this time. *See* Dkt. 4, Ex. A ¶¶ 31, 42. The Tooling is therefore unique, and Tesla's inability to repossess it constitutes irreparable harm that cannot be remedied through monetary damages alone.

### III.     CONCLUSION

Tesla respectfully requests the Court either rule on the papers or, if the Court would find oral argument helpful, set a hearing on Tesla's *Motion for Temporary Restraining Order and Writ of Replevin/Sequestration* for tomorrow, July 28, 2026.

Dated: July 27, 2026

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

*/s/ Marc B. Collier*
Marc B. Collier
Texas Bar No. 00792418
marc.collier@nortonrosefulbright.com
Ethan Glenn
Texas Bar No. 24101810
ethan.glenn@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701-4255
Telephone:     (512) 474-5201
Facsimile:     (512) 536-4598

*Counsel for Plaintiff Tesla, Inc.*

## CERTIFICATE OF SERVICE

I certify that, on July 27, 2026, this document was filed and served on all counsel of record

via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

Liara A. Silva
State Bar No. 24117923
lsilva@fritzbyrne.law
FRITZ BYRNE, PLLC
402 West Seventh St
Austin, Texas 78701
Telephone: (512) 476-2020
Telecopy: (512) 477-5267

AND

Todd A. Holleman (MI Bar P57699)
(Pending Pro Hac Vice Request)
hollemant@millerjohnson.com
Miller Johnson
500 Woodward Ave., Suite 3600
Detroit, MI 48226
313-672-6939

*Attorneys for Angstrom Automotive Group, LLC*

/s/ Marc B. Collier
Marc B. Collier