IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| TESLA, INC., | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 6:26-cv-0477-CRW-DNM |
| ANGSTROM AUTOMOTIVE GROUP, | § | |
| LLC, | § | |
| | § | |
|     *Defendant*. | § | |

## DEFENDANT ANGSTROM AUTOMOTIVE GROUP, LLC'S ANSWER TO PLAINTIFF TESLA, INC.'S ORIGINAL COMPLAINT

Defendant Angstrom Automotive Group, LLC ("Angstrom Automotive") respectfully submits its *Answer to Original Complaint* filed by Plaintiff Tesla, Inc.'s ("Tesla"), and answers as follows:

## I. INTRODUCTION

1.      One of the oldest rules taught from the playground is when property belongs to someone else, you return it. Here, Tesla owns specialized manufacturing tooling in Angstrom's possession. Tesla designed the tooling, paid for it in full, and has an unconditional contractual right to retrieve it. Tesla demanded the return of its property. Angstrom refused. Now, this Court's intervention is required to prevent immediate and irreparable harm to Tesla.

**Answer: The preceding paragraph is introductory and argumentative and does not require a response from Defendant. To the extent a response is required, Defendant denies the allegations in this paragraph as untrue. Answering further, this Court lacks personal jurisdiction over Defendant Angstrom Automotive and Tesla fails to sufficiently allege a *prima facie* showing otherwise.**

2.      This case is about Angstrom's unlawful refusal to permit Tesla to retrieve its own property—custom-manufactured tooling, jigs, dies, gauges, fixtures, molds, patterns, and related equipment (collectively, the "Tooling")—from a manufacturing facility located in Troy, Texas (the "Anderton Facility"). Tesla designed, commissioned, and paid for that Tooling in full, and has a contractual, unlimited right to retrieve that Tooling from the Anderton Facility. Angstrom is not using the Tooling and has no legitimate purpose for retaining it. Instead, Angstrom is leveraging its possession of Tesla's property to extract commercial concessions to which it has no contractual entitlement.

**Answer: The preceding paragraph is introductory and argumentative and does not require a response from Defendant. To the extent a response is required, Defendant denies the allegations in this paragraph as untrue. Answering further, this Court lacks personal jurisdiction over Defendant Angstrom Automotive and Tesla fails to sufficiently allege a *prima facie* showing otherwise.**

3.      Angstrom is leveraging the Tooling for its own gain; in the last month alone, Angstrom has informed Tesla of its intention to shut down the Anderton facility, and then attempted to condition its continued operation of the Anderton Facility and the Tooling on Tesla's agreement to pay Angstrom $250,000 per week (on top of any payments for parts manufactured and shipped)—a unilateral demand with no basis in the parties' contract.

**Answer: Answer: The preceding paragraph is introductory and argumentative and does not require a response from Defendant. To the extent a response is required, Defendant denies the allegations in this paragraph as untrue. Answering further, this Court lacks personal jurisdiction over Defendant Angstrom Automotive and Tesla fails to sufficiently**

**allege a *prima facie* showing otherwise.**

4.      Angstrom's refusal to allow Tesla to retrieve the Tooling also causes irreparable harm to Tesla because that Tooling is the means by which critical components for Tesla's Cybertrucks are manufactured. As of the date of this filing, Tesla is not aware of any currently qualified alternative supplier that can produce these components in the required volume using existing tooling. Tesla's on-hand supply of the parts produced using the Tooling is dwindling and will be exhausted shortly due to Angstrom's refusal to ship Tesla's parts currently in its possession. Without access to its own Tooling, Tesla's Cybertruck production line will be impacted, causing immediate and irreparable harm to Tesla, its reputation, its employees, its customers, and its other suppliers (and those suppliers' employees) that no monetary award can remedy.

**Answer: The preceding paragraph is introductory and argumentative and does not require a response from Defendant. To the extent a response is required, Defendant denies the allegations in this paragraph as untrue. Answering further, this Court lacks personal jurisdiction over Defendant Angstrom Automotive and Tesla fails to sufficiently allege a *prima facie* showing otherwise.**

5.      Tesla requests the Court to grant it one thing: retrieval of Tesla's Tooling. It does not seek to litigate any other disputes between the Parties. To support that request, Tesla asserts claims for breach of contract, anticipatory repudiation, conversion, trespass to chattels, and declaratory judgment, and seeks emergency injunctive relief in the form of a temporary restraining order and a writ of replevin.

**Answer: The preceding paragraph is introductory and argumentative and does not require a response from Defendant. To the extent a response is required, Defendant denies the allegations in this paragraph as untrue. Answering further, this Court lacks personal**

jurisdiction over Defendant Angstrom Automotive and Tesla fails to sufficiently allege a *prima facie* showing otherwise.

## II. PARTIES

6. Tesla is a Texas corporation with its principal place of business in Austin, Texas.

**Answer: Admitted based on information and belief.**

7. Defendant Angstrom Automotive Group, LLC is a Michigan limited liability company. Upon information and belief, none of Angstrom's members are citizens of Texas. Angstrom can be served via its registered agent Nagesh Palakurthi at 25330 Telegraph Rd, Southfield, Michigan 48033.

**Answer: Admitted to the extent that Angstrom Automotive is a Michigan LLC, whose members do not include citizens of Texas, but Angstrom Automotive denies that it is a proper party to this lawsuit. Answering further, this Court lacks personal jurisdiction over Defendant Angstrom Automotive and Tesla fails to sufficiently allege a *prima facie* showing otherwise.**

## III. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the parties. Tesla, both through its state of incorporation and its principal place of business, is a citizen of the State of Texas. Angstrom, upon information and belief, is a citizen of the state of Michigan because of the citizenship of its members.

**Answer: Angstrom Automotive does not contest that this Court would have subject-matter jurisdiction over this action if the Court could properly exercise personal jurisdiction over this defendant, and it cannot. Tesla has not alleged sufficient facts to permit this Court**

**to exercise either general or specific jurisdiction over this defendant.**

9.    The amount in controversy exceeds $75,000, exclusive of interest and costs.

**<u>Answer</u>: Angstrom Automotive does not contest that this Court would have subject-matter jurisdiction over this action if the Court could properly exercise personal jurisdiction over this defendant, and it cannot. Tesla has not alleged sufficient facts to permit this Court to exercise either general or specific jurisdiction over this defendant.**

10.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, this District is where a substantial part of the property that is the subject of the action is situated, and because Angstrom is subject to personal jurisdiction here. Tesla's claims for injunctive and equitable relief are authorized by Federal Rules of Civil Procedure 64 and 65 and the equitable powers of this Court.

**<u>Answer</u>: Angstrom Automotive denies that this Court may properly exercise personal jurisdiction over it and that it engaged in any activities in this District or in the State of Texas that would warrant the exercise of such jurisdiction, and Tesla's Complaint lacks allegations sufficient to show otherwise. Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of the Paragraph's remaining allegations and therefore denies them. Rules 64 and 65 speak for themselves and Angstrom Automotive denies any allegations inconsistent with those Rules.**

## IV.  <u>FACTUAL ALLEGATIONS</u>

11.    Tesla designs, manufactures, and sells electric vehicles, energy storage systems, and related products and services. Among Tesla's groundbreaking products is the Cybertruck—a next-generation, all-electric pickup truck. Tesla currently maintains a backlog of customer orders

for the Cybertruck, and most, if not all, of the Cybertrucks currently in production are already assigned to customers.

**Answer: Denied as untrue. Answering further, and upon information and belief, Cybertruck sales have been extraordinarily disappointing and, to the extent there is a customer backlog, Angstrom Automotive denies that it consists of public consumers but is instead a backlog of vehicles purchased by Tesla's affiliates.**

12. To build such a groundbreaking vehicle, Tesla must design and manufacture custom parts. Those parts are made using unique Tooling that is manufactured specifically to Tesla's specifications. The custom Tesla Tooling then produces parts that can only be used to build Tesla vehicles (with the relevant one here being the Cybertruck).

**Answer: Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies them as untrue.**

13. Angstrom is one of Tesla's suppliers that uses Tesla's Tooling. Pursuant to a binding contract between it and Tesla—the General Terms and Conditions for Prototype or Production Parts or Services ("Contract")—Angstrom uses Tesla's Tooling to produce some of the parts for Tesla's Cybertrucks and Model Y vehicles.

**Answer: Denied as untrue.**

14. Under the Contract, Angstrom uses Tesla's Tooling to produce Tesla parts at Angstrom's manufacturing facility located at 222 Lely Drive, Troy, Texas 76579 (the "Anderton Facility"). Angstrom is holding Tesla's Tooling at that Anderton Facility.

**Answer: Denied as untrue.**

15. Tesla's Tooling that Angstrom uses to manufacture these parts was developed specifically for Tesla vehicles. Neither these parts nor the Tooling used to create them are obtainable

on the open market.

**Answer: Denied as untrue.**

16.    In particular, Tesla's Tooling at the Anderton Facility produces parts (the "Products") that are critical components designed (as relevant to this suit) specifically and exclusively for Tesla's Cybertruck.

**Answer: Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies them as untrue.**

17.    The Tooling used to manufacture parts at the Anderton Facility under the Contract was custom-built, extremely complex, and physically substantial; the Tooling in question weighs literally tons. Moving this Tooling to new facilities is burdensome; trying to construct it from scratch is even more so. Each Tooling piece takes approximately five to six months to build.

**Answer: Denied as untrue.**

18.    Because of the Tooling's importance, and because of the difficulty of replacing it, Tesla negotiated for specific provisions in the Contract to protect its rights to the Tesla Tooling, including the ability to seek injunctive relief and/or enter Angstrom's facilities to take possession of Tesla's property without liability in trespass.

**Answer: Denied as untrue.**

19.    If Tesla is not allowed to recover its Tooling from the Anderton Facility, Tesla's current on-hand inventory of Products will be exhausted shortly. Without the Tooling, Tesla will be unable to manufacture several thousand Cybertrucks that are currently in or planned for production, most, if not all, of which are already committed to customers.

**Answer: Denied as untrue.**

20.    A parts shortage of this nature would cause irreparable harm for Tesla and others. If

due to Angstrom's withholding of its Property, Tesla is unable to timely deliver preordered vehicles to its customers, Tesla will also suffer significant reputational harm, including the erosion of other supplier and customer goodwill.

**Answer: Denied as untrue.**

21.     Angstrom is aware that the parts made by the Tooling housed at the Anderton Facility are needed to manufacture Tesla Cybertrucks. Armed with that knowledge, Angstrom is deliberately exploiting Tesla's attempts to retrieve the Tesla Tooling to exert commercial pressure, effectively holding Tesla's own property for ransom in an effort to extract concessions to which Angstrom has no contractual or legal entitlement.

**Answer: Denied as untrue.**

22.     Before Angstrom owned the Anderton Facility, Tesla had a similar supplier relationship with non-party Anderton Castings, LLC ("Anderton"). Anderton was a casting and manufacturing supplier that operated out of the Anderton Facility, which assets would later be acquired by Angstrom. On March 19, 2021, Tesla and Anderton executed "General Terms and Conditions for Prototype or Production Parts or Services" (the "Anderton Contract").

**Answer: Denied as untrue that Angstrom Automotive owned the Facility in Troy, Texas, at any time. The remaining allegations in this Paragraph are denied because Angstrom Automotive lacks information or knowledge sufficient to form a belief as to their truth.**

23.     The Anderton Contract is how Tesla ordered, purchased and owns every piece of Tooling that is now being held by Angstrom.

**Answer: Denied as untrue that Angstrom Automotive owned the Facility in Troy, Texas, and that Angstrom Automotive possesses any of the Tooling.   The remaining allegations in this Paragraph are denied because Angstrom Automotive lacks information or**

**knowledge sufficient to form a belief as to their truth.**

24. After signing the Anderton Contract, Tesla devoted significant resources to the development of the Anderton Facility, including but not limited to identifying and developing a particular supplier for Anderton (which was necessary for Anderton to be capable of manufacturing Tesla Products), developing Anderton's capabilities to be a Tier One automotive supplier, and financing the purchase of supplies for and the building of equipment to manufacture Tesla Products.

**Answer: Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies them as untrue.**

25. During the years between signing the Anderton Contract and Anderton or its assets being acquired by Angstrom in or around January 2025, Tesla also engaged in technical work to develop the Anderton Facility's capabilities and equipment.

**Answer: Denied as untrue that Angstrom Automotive has ever owned the Facility in Troy, Texas. Denied as untrue that Angstrom Automotive acquired Anderton in any manner. The remaining allegations in this Paragraph are denied because Angstrom Automotive lacks information or knowledge sufficient to form a belief as to their truth.**

26. In addition, Tesla devoted extensive engineering resources to the Anderton Facility to develop the manufacturing process for the Cybertruck parts, including by providing review of process flow, cycle time analysis, statistical analysis, and recommendations on machine selection.

**Answer: Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies them as untrue.**

27. Specifically, in 2022 and 2023, pursuant to the Anderton Contract, Tesla issued Purchase Orders to Anderton to manufacture the tooling that would be necessary to produce Tesla Products. Each Tooling set was manufactured using a specific combination of die cast tools, trim

dies, fixtures, cutting tools, gauge sets, pin presses, x-ray equipment, and other items.

**Answer: Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies them as untrue.**

28. Anderton used Tesla's specifications and plans to build the custom Tooling at the Anderton Facility.

**Answer: Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies them as untrue.**

29. When Anderton completed manufacturing each Tooling set, it issued a corresponding invoice to Tesla for payment.

**Answer: Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies them as untrue.**

30. Anderton invoiced Tesla for all Tooling Purchase Orders, and Tesla paid each Anderton invoice in full.

**Answer: Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies them as untrue.**

31. In summary, Anderton manufactured the Tooling to Tesla's specifications. Anderton issued invoices, and Tesla then fully paid for the Tesla Tooling.

**Answer: Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies them as untrue.**

32. Tesla thus currently owns all Tooling in the Anderton Facility.

**Answer: Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies them as untrue.**

33. At the same time that Tesla was working with Anderton, it also developed a

relationship with Angstrom. On August 31, 2021, Tesla and Angstrom entered into a supplier contract similar to the Anderton Contract titled "General Terms and Conditions for Prototype or Production Parts or Services" (the "Contract"). Angstrom executed the Contract on behalf of itself and on behalf of each of its affiliates, thereby binding itself and its affiliates to the Contract's terms, conditions, and obligations.

**Answer: This Paragraph states allegations concerning a written document(s), the contents of which speak for themselves. Angstrom Automotive denies any allegations inconsistent with the contents of the referenced document(s). Answering further, Angstrom Automotive explicitly denies that the GTC have any relevance to Tesla's claims in this Complaint. To the extent the GTC do apply here, then Tesla has breached Section 20.7(b)-(d) by filing this action violation of the GTC's arbitration agreement.**

34.    In or around January 2025, Angstrom's affiliate non-party Angstrom Aluminum Castings, LLC (collectively, "Angstrom") acquired Anderton, or its assets including the Anderton Facility. The acquisition, which was effective as of December 31, 2024, was announced on January 3, 2025. Angstrom did not acquire title to Tesla's Tooling, because Anderton did not have that title to sell.

**Answer:    Angstrom Automotive admits that Angstrom Aluminum Castings, LLC ("AAC") acquired Anderton more than three years after the GTC was allegedly executed between Tesla and Angstrom Automotive. Angstrom Automotive further admits that it never acquired title to Tesla's Tooling. Answering further, Angstrom Automotive never claimed to have title to the Tooling and is not a proper party to this action. Angstrom Automotive denies that it is an "affiliate" of Angstrom Aluminum Castings, LLC because that term is not yet defined in the Complaint and the contractual definition later assigned to it is erroneous.**

**Therefore, Angstrom Automotive expressly rejects Tesla's attempt to impermissibly lump to separate entities together on the fly, having provided nothing more than conclusory allegations in support of its disregard for the corporate form, and answers these allegations on its own behalf only. Angstrom Automotive lacks information or knowledge about the remaining allegations to form a belief as to their truth and therefore denies them.**

35.     Under the Contract, Tesla possesses the unconditional right to take possession of its Tesla Property at the Anderton Facility at any time, with or without cause and without payment of any kind.

**Answer: Denied as untrue.**

36.     Tesla's right to possession of the Tooling is absolute. It is not conditioned on the provision of advanced notice to Angstrom, on the existence of a dispute, on Angstrom's consent, or on any payment to Angstrom. Under the Contract, "Tesla may retake immediate possession of Tesla Property at any time with or without cause and without payment of any kind." Contract § 11.1(e).

**Answer: Denied as untrue.**

37.     Under the Contract, Angstrom's failure to allow Tesla to retrieve the Tooling expressly entitles Tesla to obtain temporary and/or permanent injunctive relief or other equitable relief to retrieve the Tooling without the necessity of posting any bond or proof of action, injury, or damage.

**Answer: Denied as untrue.**

38.     Angstrom has never owned the Tooling. Angstrom never paid or received a single dollar toward the Tooling's design, manufacture, or acquisition. When Angstrom began to perform under the Contract at the Anderton Facility, Angstrom subjected itself to a series of obligations that

confirm Angstrom's limited role as a custodian—not an owner—of Tesla's Tooling. Among other things, Angstrom agreed to: use Tesla Property exclusively for the manufacture, storage, and transport of Products for Tesla; clearly mark and identify Tesla Property as belonging to Tesla; refrain from removing Tesla Property from Seller's premises without Tesla's prior written approval; and maintain and safeguard Tesla Property in good condition.

**Answer:  Angstrom Automotive admits that it never owned nor acquired title to Tesla's Tooling. Answering further, Angstrom Automotive never claimed to have title to the Tooling and is not a proper party to this action. Angstrom Automotive denies that it ever "began to perform under the Contract at the Anderton Facility," because Angstrom Automotive neither owns nor operates that facility. Angstrom Automotive denies all remaining allegations in this Paragraph.**

39.     Angstrom's only role with respect to the Tooling has been to hold it and use it for the manufacture of Products for Tesla until Tesla demands its return.

**Answer: Denied as untrue in that Angstrom Automotive had any role, at any time, regarding the Tooling at issue in Tesla's Complaint.**

40.     Angstrom's operation of the Anderton Facility has been unsatisfactory in numerous respects.

**Answer: Denied as untrue in that Angstrom Automotive never operated in the facility in Troy, Texas.**

41.     Since at least May 5, 2026, Angstrom has consistently under-shipped to Tesla's schedule releases.

**Answer: Denied as untrue because Angstrom never shipped to Tesla from the Troy facility, since May 2026 or any other date.**

13

42.     On July 13, 2026, Angstrom's Vice President of Finance Rajneesh Banga informed Tesla during a phone call that Angstrom intended to shut down the Anderton Facility. He then refused to cooperate with Tesla on any exit plan for Tesla's Tooling within the facility.

**Answer: Denied as untrue.**

43.     On July 15, 2026, based on Angstrom's under-shipments and its representation that it was shutting down the Anderton Facility coupled with Tesla's need (based on Angstrom's refusal to release parts) to retrieve the Tooling to send it to an alternative supplier, Tesla sent Angstrom a Demand for Immediate Release of Tesla Property.

**Answer: Denied as untrue.**

44.     On July 16, 2026, Angstrom's Chief Executive Officer and President Nagesh Palakurthi confirmed that Angstrom had received Tesla's Demand, but did not respond confirming whether or not Tesla would be permitted access.

**Answer: Denied as untrue.**

45.     On July 17, 2026, Tesla provided Angstrom with advance written notice that a Tesla retrieval team would arrive at the Anderton Facility on July 21, 2026 to take possession of Tesla's property.

**Answer: Denied as untrue.**

46.     On July 20, 2026, Angstrom stated in writing that it would not permit Tesla to remove any Tesla Tooling from the Anderton Facility on July 21, 2026. It also—for the first time— demanded compensation for alleged (and unspecified) modifications to the Tooling that Tesla never requested, authorized, or approved. Angstrom also attempted to condition the continued operation of the Anderton Facility on Tesla paying Angstrom $250,000.00 per week on top of any amounts paid for Purchase Orders.

**Answer: Denied as untrue.**

47.     That same day, Tesla sent Angstrom a Notice of Property Retrieval, stating that Tesla would be retrieving the Tesla Property from the Anderton Facility on July 21, 2026.

**Answer: Denied as untrue.**

48.     On July 21, 2026, Tesla representatives arrived at the Anderton Facility accompanied by a law enforcement officer and a retrieval crew equipped to retrieve Tesla's property. Despite Tesla's clear ownership rights, its repeated written demands, and its advance notice of the retrieval, Angstrom's on-site personnel refused to permit the team to enter the facility, stating that Angstrom's corporate team had instructed them to deny Tesla access.

**Answer: Denied as untrue.**

49.     If Tesla cannot retrieve its Tooling from the Anderton Facility immediately, it will be irreparably harmed.

**Answer: Denied as untrue.**

50.     As background, before ceasing production, Angstrom used the Tesla Tooling to manufacture approximately 700 Tesla products that were scheduled to ship to Tesla on July 17, 2026; those Tesla Products are, upon information and belief, currently being held at the Anderton Facility by Angstrom.

**Answer: Denied as untrue.**

51.     Angstrom abruptly cancelled the shipment of those 700 Tesla products and refused further deliveries required under the Contract, meaning Tesla's current on-hand supply of the Tesla products is dwindling.

**Answer: Denied as untrue.**

52.     Against the backdrop of lowered products in its possession, the immediate access to

15

the Tesla Tooling is necessary to avoid or at least minimize production delays; Tesla currently has several thousand Cybertrucks that are currently in or planned for production—most of which are already assigned to customers, and nearly as many employees at the ready to produce them.

53.    As noted above, there is currently a backlog of customer orders (wherein there are more customers who have ordered a Cybertruck than there are current Cybertrucks in production).

**Answer: Denied as untrue.**

54.    A failure to return Tesla's Tooling would cause real, irreparable harm for Tesla.

**Answer: Denied as untrue.**

## V.    CAUSES OF ACTION

### COUNT NO. ONE:
### BREACH OF CONTRACT

55.    Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

**Answer:  Angstrom Automotive incorporates by reference all answers to the preceding allegations as if fully set forth below.**

56.    On August 31, 2021, Tesla and Angstrom Automotive entered into a valid, enforceable, and binding Contract.

**Answer: This Paragraph states allegations concerning a written document(s), the contents of which speak for themselves.  Angstrom Automotive denies any allegations inconsistent with the contents of the referenced document(s).  Answering further, Angstrom Automotive explicitly denies that the GTC have any relevance to Tesla's claims in this Complaint.  To the extent the GTC do apply here, then Tesla has breached Section 20.7(b)-(d) by filing this action violation of the GTC's arbitration agreement.**

57.    The Contract is a valid, enforceable agreement between Tesla and Angstrom and its

16

affiliates. Angstrom executed the Contract on behalf of itself and its affiliates, thereby binding them—including non-party Angstrom Aluminum Castings, LLC—to the Contract's terms and obligations.

**Answer: Denied as untrue.**

58.     Under the Contract, Tesla owns the Tooling located at the Anderton Facility and has the contractual right to retrieve its Tesla Property at any time, with or without cause and without payment of any kind.

**Answer: Denied as untrue.**

59.     Tesla fully performed all of its obligations under the Contract, or was ready, willing, and able to perform, except to the extent its performance was prevented, hindered, or rendered impossible by Angstrom's conduct.

**Answer: Denied as untrue.**

60.     Angstrom has materially breached the Contract by repeatedly refusing to permit Tesla to retrieve its Tooling from the Anderton Facility, including by physically turning Tesla's employees and crew away, in direct contravention of Tesla's contractual right to do so.

**Answer: Denied as untrue.**

61.     Tesla has complied with all conditions precedent to bringing this action, or such conditions have been waived, excused, or rendered futile by Angstrom's conduct.

**Answer: Denied as untrue.**

62.     As a direct and proximate result of Angstrom's material breaches, Tesla has suffered and continues to suffer substantial irreparable harm. Tesla seeks an order directing Angstrom to allow Tesla to retrieve the Tooling.

**Answer: Denied as untrue that Angstrom Automotive has breached any agreement**

17

**with Tesla or caused Tesla to suffer damages or harm of any sort.**

## COUNT NO. TWO:
## ANTICIPATORY REPUDIATION

63.     Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

**Answer:  Angstrom Automotive incorporates by reference all answers to the preceding allegations as if fully set forth below.**

64.     An anticipatory breach occurs when a party absolutely repudiates the obligation without just excuse and the other party is damaged by the repudiation.

**Answer: This paragraph contains a legal conclusion to which no response is required.**

65.     On August 31, 2021, Tesla and Angstrom Automotive entered into a valid, enforceable, and binding Contract.

**Answer: This Paragraph states allegations concerning a written document(s), the contents of which speak for themselves.  Angstrom Automotive denies any allegations inconsistent with the contents of the referenced document(s).  Answering further, Angstrom Automotive explicitly denies that the GTC have any relevance to Tesla's claims in this Complaint.  To the extent the GTC do apply here, then Tesla has breached Section 20.7(b)-(d) by filing this action violation of the GTC's arbitration agreement.**

66.     The Contract is a valid, enforceable agreement between Tesla and Angstrom and its affiliates. Angstrom executed the Contract on behalf of itself and its affiliates, thereby binding them—including non-party Angstrom Aluminum Castings, LLC—to the Contract's terms and obligations.

**Answer: Denied as untrue.**

67.     Tesla fully performed its obligations under the Contract, or was ready, willing, and

able to perform, except to the extent its performance was prevented, hindered, or rendered impossible by Angstrom's conduct.

**Answer: Denied as untrue.**

68.    Angstrom, through its actions and inactions—including its repeated representations to Tesla—has made clear that it intends to breach the Contract by not allowing Tesla to retrieve the Tooling from the Anderton Facility.

**Answer: Denied as untrue.**

69.    As a direct and proximate result of the anticipatory breaches of contract by Angstrom, Tesla is entitled to specific performance of the Contract—specifically, requiring Angstrom to allow Tesla to retrieve the Tooling.

**Answer: Denied as untrue.**

70.    Tesla has complied with all conditions precedent to bringing this action, or such conditions have been waived, excused, or rendered futile by Angstrom's conduct.

**Answer: Denied as untrue.**

71.    Tesla has been damaged and will suffer irreparable harm if it is not allowed to retrieve the Tooling from the Anderton Facility. Tesla has no other adequate remedy at law and seeks an order directing Angstrom to allow Tesla to retrieve the Tooling.

**Answer: Denied as untrue that Angstrom Automotive has breached any agreement with Tesla or caused Tesla to suffer damages or harm of any sort.**

**COUNT NO. THREE:**
**CONVERSION**

72.    Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

**Answer:  Angstrom Automotive incorporates by reference all answers to the preceding**

19

**allegations as if fully set forth below.**

73.        Tesla owns the Tooling at the Anderton Facility.

**Answer: Angstrom Automotive lacks information or knowledge sufficient to form a belief as to the truth of this allegation.**

74.        By refusing to allow Tesla to retrieve its Tooling and by keeping the Tooling at the Anderton Facility, Angstrom has assumed and is exercising unauthorized dominion and control over that property to the exclusion of Tesla's ownership rights.

**Answer: Denied as untrue.**

75.        Tesla has made repeated requests and demands for Angstrom to return the Tooling.

**Answer: Denied as untrue.**

76.        Despite those requests and demands, Angstrom continues to refuse to return the Tooling to Tesla.

**Answer: Denied as untrue.**

77.        As a direct and proximate result of Angstrom's conversion of Tesla's property, Tesla has suffered and continues to suffer injury and substantial damages, including irreparable harm for which no adequate remedy at law exists, and seeks an order directing Angstrom to release the Tooling to Tesla.

**Answer: Denied as untrue that Angstrom Automotive has breached any agreement with Tesla or caused Tesla to suffer damages or harm of any sort.**

**COUNT NO. FOUR:**
**TRESPASS TO CHATTELS**

78.        Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

**Answer:  Angstrom Automotive incorporates by reference all answers to the preceding**

**allegations as if fully set forth below.**

79.     Tesla owns the Tooling at the Anderton Facility in Troy, Texas.

**Answer:  Angstrom Automotive incorporates by reference all answers to the preceding allegations as if fully set forth below.**

80.     Tesla sent multiple requests and demand letters to Angstrom demanding that it be allowed into the Anderton Facility to retrieve its Tooling.

**Answer: Denied as untrue.**

81.     Tesla also attempted to possess and/or use the Tesla Tooling on July 21, 2026, by sending a representative and a crew, escorted by law enforcement, to retrieve its property.

**Answer: Denied as untrue.**

82.     Angstrom denied Tesla access to the Tesla Tooling and otherwise prevented Tesla from removing the Tooling from the Anderton Facility on July 21, 2026 and before.

**Answer: Denied as untrue.**

83.     Tesla had a right under the Contract to access the Anderton Facility at any time to retrieve its Tooling.

**Answer: Denied as untrue.**

84.     Angstrom's denial and prevention deprived Tesla of the use or possession of the Tooling; Angstrom's actions to retain possession of the Tesla Tooling were wrongful.

**Answer: Denied as untrue.**

85.     As alleged above, Tesla needs to possess the Tooling to prevent irreparable harm that will begin shortly.

**Answer: Denied as untrue.**

86.     Angstrom's refusal prevented Tesla from possessing the Tooling for at least a week,

and now more.

**Answer: Denied as untrue.**

87.      Given the short timeline between now and when Tesla's Cybertruck supplies will run out, Angstrom's wrongful interference with Tesla's right to possess the Tooling deprived Tesla of possession for a substantial period of time.

**Answer: Denied as untrue.**

88.      Therefore, by continuing to retain the Tesla Tooling after Tesla made a demand for it, Angstrom committed a trespass to chattels.

**Answer: Denied as untrue.**

89.      As a direct and proximate result of Angstrom's trespass to chattels, Tesla has suffered and continues to suffer injury and substantial damages and seeks an order directing Angstrom to release the Tooling to Tesla.

**Answer: Denied as untrue that Angstrom Automotive has breached any agreement with Tesla or caused Tesla to suffer damages or harm of any sort.**

## COUNT NO. FIVE:
## DECLARATORY JUDGMENT

90.      Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

**Answer:  Angstrom Automotive incorporates by reference all answers to the preceding allegations as if fully set forth below.**

91.      On August 31, 2021, Tesla and Angstrom Automotive entered into a valid, enforceable, and binding Contract.

**Answer: This Paragraph states allegations concerning a written document(s), the contents of which speak for themselves.  Angstrom Automotive denies any allegations**

**inconsistent with the contents of the referenced document(s).  Answering further, Angstrom Automotive explicitly denies that the GTC have any relevance to Tesla's claims in this Complaint.  To the extent the GTC do apply here, then Tesla has breached Section 20.7(b)-(d) by filing this action violation of the GTC's arbitration agreement.**

92.     The Contract is a valid, enforceable agreement between Tesla and Angstrom and its affiliates. Angstrom executed the Contract on behalf of itself and its affiliates, thereby binding them—including non-party Angstrom Aluminum Castings, LLC—to the Contract's terms and obligations.

**Answer: Denied as untrue.**

93.     There is currently a dispute between the Parties regarding whether Tesla has the right under the Contract to retrieve the Tooling at the Anderton Facility.

**Answer: Denied as untrue.**

94.     The Contract is clear that Tesla has the right to retrieve the Tooling at any time.

**Answer: Denied as untrue.**

95.     Tesla requests that the Court declare its rights under the Contract regarding retrieval of the Tooling.

**Answer: This Paragraph contains a prayer for relief to which no response is required. To the extent a response is required, Angstrom Automotive requests that the Court dismiss this Complaint with prejudice in light of Tesla knowingly suing the wrong party for improper purposes without making any attempt whatsoever to plead a basis for disregarding the corporate form.**

## VI.  REQUESTS FOR EMERGENCY RELIEF

96.     Because of Angstrom's conduct detailed above, Tesla is forced to seek the following

23

emergency relief to prevent irreparable harm.

**Answer: Denied as untrue.**

## EMERGENCY RELIEF NO. 1:
## TEMPORARY RESTRAINING ORDER

97.     Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

**Answer:  Angstrom Automotive incorporates by reference all answers to the preceding allegations as if fully set forth below.**

98.     Pursuant to Federal Rules of Civil Procedure 65, Tesla respectfully requests that this Court issue a Temporary Restraining Order (1) requiring Angstrom to immediately permit Tesla to enter the Anderton Facility and retrieve all Tesla Property, including all Tooling and equipment owned by Tesla, and (2) prohibiting Angstrom from concealing, disposing of, damaging, destroying, or removing any Tesla Property from the Anderton Facility. Tesla will submit under separate cover a motion detailing the legal and factual basis for the temporary restraining order.

**Answer:  This Paragraph contains a prayer for relief to which no response is required. To the extent a response is required, Angstrom Automotive requests that the Court dismiss this Complaint with prejudice in light of Tesla knowingly suing the wrong party for improper purposes without making any attempt whatsoever to plead a basis for disregarding the corporate form.**

99.     If the Court does not issue a temporary restraining order, Tesla will suffer irreparable harm.

**Answer: Denied as untrue.**

## EMERGENCY RELIEF NO. 2:

## WRIT OF REPLEVIN/SEQUESTRATION

100.   Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

**Answer:  Angstrom Automotive incorporates by reference all answers to the preceding allegations as if fully set forth below.**

101.   Tesla seeks a writ of replevin and sequestration pursuant to Federal Rule of Civil Procedure 64 and Texas Civil Practice and Remedies Code § 62.001 et seq. directing the immediate seizure and return to Tesla of the Tooling located at the Anderton Facility.

**Answer:  This Paragraph contains a prayer for relief to which no response is required. To the extent a response is required, Angstrom Automotive requests that the Court dismiss this Complaint with prejudice in light of Tesla knowingly suing the wrong party for improper purposes without making any attempt whatsoever to plead a basis for disregarding the corporate form.**

102.   Tesla owns the Tooling at the Anderton Facility, and Angstrom has prevented Tesla from retrieving it. There is real concern that, if the Tooling is not seized, Angstrom might move or allow the waste and degradation of the Tooling. Tesla will submit under separate cover a motion detailing the legal and factual basis for the writ of replevin and sequestration.

**Answer: Denied as untrue.**

## VII. DAMAGES

103.   Tesla incorporates by reference the preceding allegations as if fully set forth in this paragraph.

**Answer:  Angstrom Automotive incorporates by reference all answers to the preceding allegations as if fully set forth below.**

25

104.   As a proximate and producing cause of all claims asserted herein, Tesla has sustained irreparable harm. It seeks specific performance, equitable injunctive relief as well as attorneys' fees and court costs.

**Answer: Denied as untrue.**

## IX.  PRAYER FOR RELIEF

106.   **This Paragraph contains a prayer for relief to which no response is required. To the extent a response is required, Angstrom Automotive requests that the Court dismiss this Complaint with prejudice in light of Tesla knowingly suing the wrong party for improper purposes without making any attempt whatsoever to plead a basis for disregarding the corporate form.**

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Defendant Angstrom Automotive asserts the following affirmative and additional defenses without assuming the burden of proof as to any issue or element that otherwise rests with Plaintiff. This statement of affirmative and additional defenses is based on Defendant's investigation to date, which has been shortened by Tesla's motions for emergency relief. As a result, Defendant reserves the right to supplement or amend these affirmative and additional defenses and to assert other defenses during the court of this litigation, as discovery may warrant. Defendant also reserves the right to pursue any and all claims and cross-claims against Tesla.

(1)   This Court lacks personal jurisdiction over Defendant Angstrom Automotive and Tesla failed to sufficiently allege a *prima facie* showing that this Court may exercise jurisdiction over Angstrom Automotive.

(2) Tesla's Complaint fails to state claims upon which relief can be granted because:

   a.   there is no enforceable contract for the sale of goods between Tesla and Angstrom Automotive;

26

b. the GTC do not govern the commercial relationship and Tooling at issue in Tesla's Complaint;

c. Angstrom Automotive is not a proper party to this case and did not breach the GTC or any other Tesla contract in any way;

d. Angstrom Automotive is not in possession of the Tooling;

e. Tesla's reliance on the term "affiliates" in the GTC fails as a matter of law and, as a result, Tesla lacks a basis for bringing its claims against this defendant;

f. Tesla has performed no contractual or other obligations for Angstrom Automotive's benefit; and

g. Angstrom Automotive has not caused Tesla to suffer damages or other harm.

(3)    Tesla's claims are barred in whole or in part by the doctrines of laches, waiver, estoppel, unjust enrichment, and/or release.

(4)    To the extent it has any damages, Tesla failed to mitigate them.

(5)    Tesla committed the first material breach of any contract between the parties and is therefore barred from bringing claims for alleged subsequent breaches.

(6)    To the extent the GTC apply here, Tesla was contractually obligated to resolve any dispute with Angstrom Automotive to mandatory arbitration pursuant to Section 20.7(b)-(d), and this Court should dismiss or stay this proceeding and compel Tesla to arbitrate its dispute.

WHEREFORE, Angstrom Automotive requests that this Court dismiss the matter before it and award Angstrom Automotive its fees and costs incurred in responding to it as well as any other appropriate relief.

Respectfully submitted,

**MILLER JOHNSON**

By:_____
Todd A. Holleman (MI Bar P57699)

27

*Admitted Pro Hac Vice*
Business Address:
>500 Woodward Avenue, Suite 3600
>Detroit, MI  48226

Telephone: (313) 672-6939
Email: hollemant@millerjohnson.com


**FRITZ BYRNE, PLLC**
Liara A. Silva (State Bar No. 24117923)
Business Address:
>401 West Seventh Street
>Austin, TX  78701

Telephone: (512) 476-2020
Email: lsilva@fritzbyrne.law

**ATTORNEYS FOR DEFENDANT**

28

MJ_ND 4897-4746-8482v3