**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

TESLA, INC.,

      Plaintiff,                                                    Civil Action No. 6:26-cv-00477

v.

ANGSTROM AUTOMOTIVE GROUP, LLC,

      Defendant.

---

**BRIEF IN SUPPORT OF DEFENDANT ANGSTROM AUTOMOTIVE
GROUP, LLC'S MOTION TO STAY TEMPORARY RESTRAINING ORDER
AND WRIT OF REPLEVIN PENDING APPEAL**

Defendant Angstrom Automotive Group, LLC ("Angstrom Automotive") states the following in support of its Motion to Stay Temporary Restraining Order and Writ of Replevin Pending Appeal:

**Introduction**

On August 3, 2026, this Court granted Tesla's request for injunctive relief and a writ of replevin permitting Tesla to enter the facility operated by non-party Angstrom Aluminum Castings Texas, LLC, and remove certain automotive tooling and other equipment (the "Order"). Respectfully, that Order was in error. Tesla failed to address controlling Ninth Circuit law that wholly and unambiguously prohibits the enforcement of Angstrom Automotive's contract against one of its "affiliates" that was not even in existence when Tesla signed the purported contract with Angstrom Automotive. Angstrom Automotive moves to stay enforcement of the TRO and Write of Replevin until its narrow appeal on this issue is concluded.

## Background

Tesla wants to seize tooling and related equipment from one of its supplier's facilities in Troy, Texas, Angstrom Aluminum Castings Texas, LLC ("AAC-Texas"). To achieve this, Tesla sued a completely different entity located in Michigan, Angstrom Automotive Group, LLC ("Angstrom Automotive"), arguing that Angstrom Automotive signed an agreement with Tesla in 2021(the "GTC") "on behalf of" all its affiliates ever, whether they existed in the past or may exist in the future. The Court apparently concluded that AAC-Texas was an "affiliate" of Angstrom Automtive's under the GTC, and, thus, subject to its terms and conditions.

## Legal Standard

The Court should consider four factors in determining whether to stay its Order pending appeal: (1) whether Angstrom Automotive has made a showing of likelihood of success on the merits; (2) whether Angstrom Automotive has made a showing of irreparable injury if the stay is not granted; (3) whether the stay would substantially harm Tesla; and (4) whether the stay would serve the public interest. *See Coastal States Gas Corp. v. Department of Energy,* 609 F.2d 736, 737 (5th Cir.1979).

## Argument

### A. Angstrom is likely to succeed on the merits because Tesla's position and this Court's decision conflict with controlling law.

Under California law, parties wishing to bind their future affiliates to a contract must include explicit language demonstrating that intent. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 718 (9th Cir. 2020). Absent forward-looking language—such as "any affiliates, both present and future"—courts should interpret contracts as applying to only those affiliate entities in existence at the time of contracting. *Id.*, citing *Unova, Inc. v. Acer Inc.*, 363 F.3d 1278, 1282 (Fed. Cir. 2004) (interpreting California law and holding that a release from liability provision "written in the

present tense … most naturally does not refer to [a party's] future parents"); and *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 997 N.Y.S.2d 339, 21 N.E.3d 1000, 1004 (2014) ("Absent explicit language demonstrating the parties' intent to bind future affiliates of the contracting parties, the term 'affiliate' includes only those affiliates in existence at the time that the contract was executed.").

In *Revitch*, the defendant DIRECTV, tried to compel arbitration of the claims against it under a contract between the plaintiff and DIRECTV's parent company, AT&T. 977 F.3d at 714–716. DIRECTV argued that it could assert the arbitration provision as one of AT&T's "affiliates." *Id*. The Ninth Circuit disagreed, interpreting California law as prohibiting such "piggybacking" where the entity was not an affiliate of the contracting party *at the time of contracting*. *Id*. at 716–718. California law required the Court to interpret the contract to give effect to the mutual intention of the parties as existed at the time of contracting, and to look to the reasonable expectation of the parties at that time. *Id*. The plaintiff, Revitch, signed his contract with AT&T four years prior to its acquisition of DIRECTV, so he could not have reasonably expected that DIRECTV would later be able to assert the arbitration provision in his contract with AT&T against him. *Id*. "Had the wireless services agreement stated that 'AT&T' refers to 'any affiliates, both present and future," we might arrive at a different conclusion, the Ninth Circuit noted. But it did not include such language, so the Court would not presume that Revitch and AT&T intended to bind future affiliates. *Id*.

Here, the company against whom Tesla wants to enforce Angstrom Automotive's contract (AAC-Texas) did not exist at the time Angstrom Automotive executed the GTC, and the clause on which Tesla relies does not include the requisite explicit and forward-looking language demonstrating the parties' intent to bind future affiliates. The GTC define "Affiliate" using the

3

present tense only, meaning "an entity, any other entity or person controlling, controlled by, or under common control with, such entity." *See* the August 2021 GTC attached to Tesla's Motion for Temporary Restraining Order. Under California law, the GTC do not include and are not binding on AAC-Texas.

### B. Enforcing the Order will cause AAC-Texas irreparable harm.

Absent a stay, Angstrom Automotive faces immediate and irreparable injury. The injunction requires it to surrender tooling that it has consistently maintained is neither within its possession nor its legal control. If Angstrom cannot comply, it faces the threat of coercive civil contempt notwithstanding the Supreme Court's recognition that "where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action." *United States v. Rylander*, 460 U.S. 752, 757 (1983) (internal citations omitted). At the same time, attempting to comply would require Angstrom Automotive to exercise authority over property held by a separate legal entity, thereby altering the very corporate-rights issue presented on appeal. Once the tooling is transferred, no subsequent appellate decision can restore the status quo ante, precisely the circumstance in which a stay is intended to preserve meaningful appellate review. *See Ruiz v. Estelle*, 650 F.2d 555, 573 (5th Cir. 1981) (finding irreparable harm to support stay when the injunction required the defendant to do the impossible by a fast approaching date certain).

### C. The balance of harms favors staying enforcement of the TRO and Writ of Replevin.

The Court's Order is directed at Angstrom Automotive concerning property that Angstrom Automotive does not possess and a facility that Angstrom Automotive does not operate. Such an order places Angstrom Automotive in the untenable position of being judicially ordered to produce property it does not possess and cannot deliver. Moreover, that is not a temporary preservation of the status quo. It would impose an affirmative obligation on an entity that has no ability to comply.

4

The harm to AAC-Texas is even more obvious. Although AAC-Texas is not a party, Tesla seeks an order that would effectively compel AAC-Texas to surrender property and relinquish disputed contractual and possessory rights without AAC-Texas having been joined, served as a defendant, or given the opportunity to litigate its own rights. Tesla can easily be protected by simply allowing the tooling to remain where it is and allow ACC-Texas to produce any necessary parts with the appropriate prices for which, if Tesla alleges are too high, to be litigated on a claim for monetary damages in the ordinary course of litigation, in fact there is a pending state court case between the actual parties existing in which such a claim can be litigated.

**D. The public interest supports staying the Order.**

The public interest does not favor permitting a litigant to obtain emergency relief against the wrong legal entity.

The public interest favors:

1.	enforcing contracts according to their actual terms and against the parties who actually entered them, *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 764 (Tex. 2018);

2.	respecting separate corporate entities, *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798–99 (Tex. 2002);

3.	requiring a plaintiff to establish its claim against the defendant it actually sued, *Texas v. United States Department of Labor*, 929 F.3d 205 (5th Cir. 2019);

4.	protecting non-parties from being deprived of property without notice and an opportunity to be heard, *Parker v. Ryan*, 960 F.2d 543, 545 (5th Cir. 1992); and

5.	resolving disputed commercial claims through ordinary judicial procedures, *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (holding that when

"Plaintiffs' only alleged harm can be obviated by monetary relief, it does not constitute the "irreparable" injury necessary to obtain the extraordinary relief of a preliminary injunction.").

### E. The Writ of Replevin should be stayed as well.

The order granting Tesla a writ of replevin/sequestration fails for the same fundamental reason. Federal Rule of Civil Procedure 64 makes state-law remedies for seizure of property available in federal court. Tesla therefore relies upon Texas Civil Practice and Remedies Code § 62.001. Tesla correctly quotes the statute as requiring, among other things, a reasonable conclusion of immediate danger involving "the defendant or the party in possession of the property." Tex. Civ. Prac. & Rem. Code § 62.001(1).  But Angstrom Automotive is not the party in possession.

Tesla's own evidence identified AAC-Texas as the entity operating the Troy facility. Tesla's own July 15, 2026 letter identifies the same facility as the AAC-Texas facility. Thus, Tesla cannot satisfy the statute by alleging that the *Angstrom Automotive* is likely to conceal, dispose of, waste, or destroy property that *Angstrom Automotive* does not possess.

Nor has Tesla shown an immediate danger of destruction. Tesla's own declaration says the tooling is currently idle. The alleged risk is principally one of future degradation and future production disruption, not an imminent threat that Angstrom Automotive will destroy or remove property. Mr. Banga also states that the tools at issue weigh tons and that each would require up to five hours and dedicated personnel to unload from machines and prepare for delivery or removal. Banga Decl. ¶ 46.  The statutory prerequisites for sequestration therefore have not been met.

### CONCLUSION

For all of the aforementioned reasons, Angstrom Automotive requests that the Court stay its August 3, 2026 order pending the resolution of Angstrom Automotive's impending emergency appeal.

Respectfully submitted,

By: /s/ Todd A. Holleman
Todd A. Holleman (*pro hac vice admission*)
Miller Johnson
500 Woodward Ave., Suite 3600
Detroit, MI 48226
hollemant@millerjohnson.com
313-672-6939

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of August, 2026, the foregoing motion and brief in support was served upon counsel of record through the Court's CM/ECF filing system.

/s/Todd A. Holleman
Todd A. Holleman (pro hac vice admission)
Attorney for Defendant

7