IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| Tesla, Inc., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 6:26-cv-00477-CRW-DNM |
| | § | |
| Angstrom Automotive Group, LLC, | § | |
| | § | |
| *Defendant.* | § | |

## PLAINTIFF TESLA, INC.'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STAY TEMPORARY RESTRAINING ORDER AND WRIT OF REPLEVIN PENDING APPEAL

Plaintiff Tesla, Inc. ("Tesla") files this response to Defendant Angstrom Automotive Group, LLC's ("Angstrom Automotive") Motion to Stay Temporary Restraining Order and Writ of Replevin Pending Appeal (Dkt. No. 20). The Court should deny the motion.

## INTRODUCTION

Four days after the Court orally ordered that Tesla's request for a temporary restraining order should be granted, and without conferring with Tesla's counsel regarding the relief requested,[1] Angstrom Automotive now moves to stay the Court's temporary restraining order on the day performance of the order begins, repeating the same arguments it made previously in briefing and at the more than four-hour evidentiary hearing the Court conducted before deciding Tesla's motion.[2] Its motion presents no new evidence, no new arguments, and no new reason for the Court to stay its order. It is, in effect, a request that the Court forget the hundreds of pages of evidence, the hearing, and the testimony and arguments that it considered before finding that *Tesla* has a reasonable likelihood of success on the merits of its claims and that *Tesla* will suffer irreparable harm without emergency relief,[3] and start over from square one.

The Court should not do so. Tesla is already engaged in compliance with the Court's order; its employees are flying to Texas for tomorrow's 8 a.m. retrieval as this Response is being written, and it has engaged a third party rigging company who has allocated flatbed trucks, forklifts and voluminous heavy equipment to effectuate it. Angstrom Automotive, and the other Angstrom entities bound by the order, should also already be complying, as they have their own obligations

---

[1] *See* L.R. CV-7(G) (requiring Angstrom to confer with Tesla before filing a non-dispositive motion, and noting that the Court can refuse to hear, or can deny, the motion if it did not).

[2] Angstrom makes this request without even requesting the Transcript from the Hearing.

[3] *ODonnell v. Harris Cnty.*, 260 F.Supp.3d 810, 820 (S.D. Tex. 2017) (denying request for stay and noting that the "grant of a stay of a preliminary injunction pending appeal [would] almost always be logically inconsistent with a prior finding of irreparable harm" to the *other* party) (internal citation omitted).

to make best efforts to prepare the Anderton Facility Tooling for retrieval no later than 8 p.m. *today*.  The Court should not allow Angstrom Automotive to delay Tesla from recovering the Tesla Tooling any longer.  The motion should be denied.

## I.     RELEVANT BACKGROUND

### A.  The Court Conducts an Evidentiary Hearing and Issues a TRO.

The Court is well familiar with the facts relevant to this TRO, including that (1) Angstrom Automotive and Angstrom Aluminum Castings Texas, LLC ("AAC-Texas") are under common control of Nagesh Palakurthi; (2) AAC-Texas is an "Affiliate" of Angstrom Automotive under the Contract as well as common law; (3) AAC-Texas is under the control of Angstrom Automotive; and (4) Angstrom Automotive and AAC-Texas, and their officers and employees, were acting in active concert and participation with one another.  *See* Dkt. No. 16 at 2-6 and Exs. F-J.

Those facts, and more, were also elicited at the hearing on Tesla's motion on July 31, 2026. At that hearing, over the course of more than four hours, the Court considered the arguments of counsel and heard from two Tesla witnesses (both of whom the Court found credible) and an Angstrom Automotive executive.   According to Angstrom Automotive's own witness, Mr. Palakurthi is in control of *every* Angstrom affiliated entity and is the only person with authority to permit Tesla to retrieve the Tooling.  Witness testimony also established Angstrom Automotive and Mr. Palakurthi's threat to shut down the Anderton Facility; Tesla's ownership of the Tooling; the uniqueness of the Tooling; Angstrom Automotive's and AAC-Texas's actions to prohibit Tesla from retrieving the Tooling; and the imminent and irreparable harm that Tesla faced if it could not retrieve the Tooling.

At the end of that hearing, the Court orally granted Tesla's motion for a temporary restraining order, finding that Tesla's witnesses were credible and that all factors for a temporary restraining order were satisfied.   The Court's written order expressly found that: Tesla's

evidentiary witnesses were credible (Dkt. No. 24 ("TRO") ¶ 3); Tesla has a substantial likelihood of success on the merits (*id*. ¶ 4); Tesla will incur irreparable harm if the requested relief is not granted (*id*. ¶ 5); the balance of hardships favors Tesla (*id*. ¶ 6); granting the requested relief is in the public interest (*id*. ¶ 7); Tesla owns the Tooling (*id*. ¶ 9); AAC-Texas and Enforge, LLC are bound by the order under Rule 65 (*id*. ¶ 11); Angstrom Automotive's motion to dismiss fails (*id*. at 6); and Angstrom Automotive will use best efforts to prepare the Tooling for removal by 8:00 p.m. C.T. on August 4th, 2026 (*id*., Ex. A at 2).

**B. The Parties have already begun performing under the TRO and Tesla has already incurred expenses.**

The TRO contemplates that ***performance has been underway for hours***. Specifically, Angstrom Automotive and all others bound by the order are required to make their best efforts to complete preparing the Tooling for removal by ***8 p.m. C.T. today***, so that Tesla can begin the removal process at the Anderton Facility at ***8 a.m. C.T. tomorrow morning***. *See* TRO, Ex. A at 2. As witness testimony confirmed, the Tooling at issue weighs many tons and takes hours to move; to comply with the order, Angstrom Automotive and its affiliates are surely already disconnecting the Tooling and otherwise making it ready for removal. *See id*. (listing actions required to prepare Tooling for removal). Angstrom Automotive already ***should*** be almost done at Anderton performing the very order it now seeks to stay. And Tesla is doing the same.

## II.    <u>LEGAL STANDARD</u>

A stay pending appeal is an "extraordinary remedy." *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019). Four well established factors govern whether to grant one: "(1) whether the applicant has made a strong showing of likelihood to succeed on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether issuance of a stay will substantially injure other interested parties; and (4) where the public interest lies." *Id*. (citing *Nken v. Holder*, 556

U.S. 418, 434 (2009)).  "The first two factors are usually the most important."  *Thomas*, 919 F.3d at 303 (citation omitted).  But even if the irreparable injury factor tilts toward the movant, "[a] stay is not a matter of right," but rather "an exercise of judicial discretion."  *Nken*, 556 U.S. at 433-434. The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.  *Id.*  A stay should be granted only "in exceptional cases," and only where there "is great likelihood, ***approaching near certainty***, that [the movant] will prevail when [the] case finally comes to be heard on the merits."  *Greene v. Fair*, 314 F.2d 200, 202 (5th Cir. 1963) (emphasis added) (denying motion for stay).

### III.  <u>ARGUMENT</u>

There is no certainty of reversal here.  Angstrom Automotive has not met its burden to show why the Court should reverse its own findings and stay the Parties' ongoing compliance.

**A. Angstrom Automotive has not shown that it is likely to succeed on the merits.**

The first and perhaps most important factor the Court must decide in Angstrom Automotive's favor before staying the TRO is whether Angstrom  has made a "strong showing" that it is likely to succeed on the merits.  *See, e.g.*, *Thomas*, 919 F.3d at 303.  It has not.

**1.  Angstrom Automotive has not shown that the TRO is appealable.**

A temporary restraining order is generally not appealable. *In re Lieb*, 915 F.2d 180, 183 (5th Cir. 1990) (holding that, as "[o]ther courts of appeals consistently have held," a temporary restraining order is not appealable).  The TRO is a temporary restraining order, not a preliminary injunction, and so it is not immediately appealable: it was decided on an emergency basis, within 11 days of the filing of Tesla's motion, and will expire of its own terms after 14 days.  *Cf.* FED. R. CIV. P. 65.  If Angstrom Automotive has no appeal right, it has no likelihood of success on appeal.

### 2. Angstrom Automotive fails to overcome the Court's finding that Tesla is likely to succeed on its claims.

Angstrom Automotive fails to contradict, much less overcome the Court's on-the-record findings. Based on the copious evidence submitted via the papers and elicited at the hearing, the Court found that "Tesla has a substantial likelihood of success on the merits." TRO ¶ 4. Angstrom Automotive submits *no* new evidence, facts, or arguments to explain why, after the Court made that finding barely four days ago, it should now entirely reverse itself and decide that, *actually*, Angstrom Automotive is now likely to succeed on the merits. Because it does not, it cannot be entitled to a stay pending appeal. *See, e.g.*, *Thomas*, 919 F.3d at 303.

Even if Angstrom Automotive properly challenged the Court's decision on likelihood of success, the Court's findings are entitled to substantial deference and may not be disturbed in the absence of clear error. *See, e.g.*, *Janvey v. Alguire*, 647 F.3d 585, 592 (5th Cir. 2011) (noting that preliminary injunction fact-findings are reviewed under clearly erroneous standard). The Court's factual determinations are even further insulated by the Court's express finding "that the testimony of Tesla's witnesses Michael Bandstra and Tushar Bhanse, which was elicited at the Hearing and subject to cross-examination, [was] credible." TRO ¶ 3. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses . . . that finding, if not internally inconsistent, *can virtually never be clear error*." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) (emphasis added); *see also Deloach Marine Services, L.L.C. v. Marquette Transportation Co., L.L.C.*, 974 F.3d 601, 607 (5th Cir. 2020) (noting that trial court's credibility findings will not be disturbed on appeal "even though [the appellate] court might have weighed the evidence differently"). Because Angstrom Automotive does not challenge the Court's credibility finding, the factual foundation of the TRO is entitled to much deference. *See id.*

### 3. Angstrom Automotive's sole argument on the merits is both irrelevant to the enforcement of the TRO and does not change the outcome.

Angstrom Automotive's sole argument for why the TRO should be stayed is that the Contract's definition of affiliate does not apply to AAC-Texas, and thus neither Angstrom Automotive nor the Court can order AAC-Texas to release the Tooling. That argument fails.

First, it fails because the Court found that Tesla is likely to succeed on the merits of its claims; *all of them*. Tesla's non-contractual claims for conversion and trespass to chattels do not depend on the interpretation of the term "affiliate" under the Contract. Rather, they will succeed based on the Court's finding—which Angstrom Automotive does not dispute—that (1) Tesla owns the Tooling (TRO ¶ 9) and (2) AAC-Texas, which controls the Tooling, is acting in concert with Angstrom Automotive (*id*. ¶ 11). Since Angstrom Automotive has not even identified an issue that would change this result, it cannot show a likelihood of success.

Second, California law does not bar interpreting "affiliates" to include AAC-Texas—to the contrary, it *requires* such an interpretation unless it would lead to an absurd result, which it would not here. The very case that Angstrom Automotive cites explains that, under the "ordinary definition" of the word "affiliates," two entities which "are under common ownership . . . today . . . are affiliates," *regardless of when* they came under common ownership. *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020). When the contract and the future affiliate are related, it is not absurd to construe the contract to encompass the future affiliate. *See, e.g.*, *McDonough v. Bidwill*, No. CV-24-00764-PHX-DWL, 2025 WL 487171, at \*10 (D. Ariz. Feb. 13, 2025). The reasons the Ninth Circuit found "absurdity" in *Revitch*, 977 F.3d at 717-18, do not apply here: (1) the Contract here is not a consumer contract, but rather a contract between sophisticated business entities; (2) the Contract here is being enforced not against the unwitting consumer counterparty, but rather against the related affiliate; and (3) whereas the defendant's conduct in *Revitch* had

nothing to do with the plaintiff's separate relationship with the later-affiliated entity. Here Angstrom Automotive's acquisition of AAC-Texas is exactly the sort of event the Contract anticipates and creates a framework for dealing with. The cases Angstrom Automotive raises for the first time in its motion—only one of which even applies California law—similarly show only that the absurdity analysis depends on the contract at issue.[4] The Contract here was between Tesla and the parent company to ensure that no matter which subsidiaries are involved or wink in or out of existence (a common issue with Angstrom), Tesla can always retrieve its own property. The Motion fails to cast any doubt whatsoever on this contractual intention, much less to show that it would be absurd for the term "affiliate" in the Contract to encompass future affiliates.

### 4. Angstrom Automotive fails to show that AAC-Texas cannot be bound by the TRO under Rule 65.

Finally, Angstrom Automotive's argument that it cannot compel AAC-Texas to release the Tooling because it is a nonparty and outside its control wholly misses the point. Rule 65 permits any person "in active concert or participation" with the enjoined party to be bound by a TRO, including those identified "in interest" or "in privity," regardless of any control being exercised. FED. R. CIV. P. 65 (d)(2)(B)-(C); *Computer Scis. Corp. v. Tata Consultancy Servs. Ltd.*, 159 F.4th 429, 453 (5th Cir. 2025) (explaining that Rule 65 extends beyond those controlled). The Court cited this rule in expressly binding AAC-Texas and its "officers, directors, agents, employees, members, representatives, parents, subsidiaries, and affiliates, and all others acting in concert and in active participation" with Angstrom. TRO ¶¶ 11, 13.

---

[4] *See Unova, Inc. v. Acer Inc.*, 363 F.3d 1278, 1282 (Fed. Cir. 2004) (holding that a settlement agreement focused on "past acts of infringement" was not intended to release "future parents," since any such release could not possibly have been anticipated at time of settlement); *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 247 (N.Y. 2014) (applying New York rather than California contract law to hold that future "affiliated foreign subpublishers" were not included within term "affiliates" because they "do not acquire a United States copyright to the relevant compositions").

Rule 65 properly applies here because overwhelming evidence shows that AAC-Texas is under common control with Angstrom Automotive and in active concert and participation with it. Most obviously, Angstrom Automotive and AAC-Texas are under the common control of, and thus acting in concert with, Mr. Palakurthi. *See* Dkt. 4 at 5-6 & Exs. C & E. There was "no doubt" that Mr. Palakurthi made the decision to lock Tesla out, *see* Dkt. 16-2 at 7, and hearing testimony established that only Mr. Palakurthi could decide whether to release the Tooling. Throughout this dispute, Mr. Palakurthi and Mr. Banga have represented that they are in control of the Tooling. *See* Dkt. 10-3; Dkt. 4, Exs. B-2, B-4. Indeed, Mr. Banga confirmed in a declaration submitted on Angstrom Automotive's behalf that AAC-Texas could continue to produce parts for Tesla. *See* Dkt. 10-1 at ¶¶ 36-37. These representations are consistent with Angstrom Automotive's own prior characterizations of itself as a "multinational group of affiliated companies" all subject to the common control of Mr. Palakurthi, who is Angstrom Automotive's CEO. *See* Dkt. 16-3 at 16; 16-1 at 63; 16-5 at 6. To now suggest that AAC-Texas is an unconnected stranger unable to comply with the Court's Order has been disproven by a mountain of evidence (including Mr. Banga's admission of same at the evidentiary hearing).

### B. Angstrom Automotive Will Not Suffer Irreparable Harm from the TRO.

Angstrom Automotive also fails to show any irreparable harm absent a stay. Indeed, Angstrom Automotive does not even assert it will suffer harm, let alone irreparable harm, if Tesla retrieves its Tooling. *Cf.* Mot.5. As Angstrom Automotive admitted at the TRO hearing, the Tooling has minimal value for it; it is not even using the Tooling right now, and it cannot use the Tooling to produce non-Tesla parts. Allowing Tesla to retrieve what is undisputedly Tesla's custom-made property, that no Angstrom entity is using, that can only be used to make parts for Tesla, cannot possibly harm Angstrom Automotive, let alone irreparably.

Instead, Angstrom Automotive's primary argument for irreparable harm is that, "if Angstrom cannot comply" with the TRO, it could face civil contempt. Mot.4. However, ***the Motion to Stay does not assert that Angstrom Automotive is in fact unable to comply.*** It is not enough to speculate as to "some possibility of irreparable injury." *Nken*, 556 U.S. at 434-35 (citation omitted, cleaned up). Angstrom Automotive's speculation about its possible inability to comply thus fails to identify any irreparable harm. Further, even if Angstrom Automotive is unable to actually order AAC-Texas to comply, AAC-Texas is separately and independently bound by the TRO under Rule 65; it must comply regardless of Angstrom Automotive's control over it.

Moreover, Angstrom Automotive's assertion of irreparable harm is undermined by its decision to wait four days—from this Court's issuance of the TRO on the record on Friday July 31, until Tuesday August 4, the *very day* Angstrom Automotive was ordered to perform by preparing the Tooling for retrieval—before filing its Motion for Stay. *Las Americas Immigrant Advocacy Ctr. v. Paxton*, EP-24-CV-00352-DCG, 2024 WL 4430542, at *5 (W.D. Tex. Sept. 27, 2024) (Guaderrama, J.) (denying motion for injunctive relief where "unexplained delay before seeking" relief "implies a lack of urgency and irreparable harm") (internal citation omitted).

**C. Tesla Will Be Substantially Harmed Absent Immediate Recovery of its Tooling.**

Angstrom Automotive fails to identify any reason for this Court to adopt a position "logically inconsistent with" its "prior finding of irreparable harm" to Tesla—as it would be required to do in order to enter the requested stay. *ODonnell v. Harris Cnty.*, 260 F.Supp.3d 810, 820 (S.D. Tex. 2017). Indeed, the Motion entirely ignores the Court's express finding that emergency relief was needed to prevent the irreparable harm to Tesla that would result if it were not permitted to recover its Tooling immediately. TRO ¶ 5. That finding was supported by a voluminous record. As Angstrom Automotive's Mr. Banga testified at the hearing, there were only two ways for Tesla to retrieve the unique Tooling necessary for supply of critical Cybertruck

components: either (i) Tesla would have to pay Angstrom Automotive's unilateral ransom demands, or (ii) this Court would have to order Angstrom Automotive to release the Tooling. Instead of meeting its burden to show otherwise, Angstrom Automotive simply argues again that it and AAC-Texas will be harmed by the TRO, then suggests that the Court reverse itself and require Tesla to recreate the Tooling from scratch and pursue monetary damages against the web of Angstrom-affiliated entities. The Motion thus fails its burden on this stay factor.

Neither should the Court be swayed by the Motion's suggestion, unsupported by any caselaw, that the stay should be granted if the "balance of harms" favors it. Mot.4-5. To the extent the balance of equities is relevant to the Court's decision, it has already weighed them, and decided them in Tesla's favor. TRO ¶ 6.

**D. Preventing Tesla from recovering the Tooling is not in the Public Interest.**

Finally, Angstrom Automotive fails to show that a stay would serve the public interest. It primarily argues that the public interest does not favor granting emergency relief "against the wrong legal entity" (Mot.5), but merely copies and pastes the arguments it presented in its TRO briefing that the Court has already rejected. The Court found a likelihood of success on Tesla's claims against Angstrom Automotive itself, based on evidence that Angstrom Automotive itself was exercising control over Tesla's Tooling in violation of Tesla's property rights and its own contractual commitments on behalf of itself and its affiliates within this State. *See supra* at 6. It is in the public interest to enforce a TRO in that situation. Angstrom Automotive's argument that the TRO disserves the public interest by granting emergency relief in the absence of an irreparable injury (Mot.5-6) fails because it presents no *new* reasons for the Court to reconsider its findings.

### IV. <u>CONCLUSION</u>

Tesla respectfully requests the Court deny Angstrom Automotive's motion.

Dated: August 4, 2026

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

*/s/ Marc B. Collier*
Marc B. Collier
Texas Bar No. 00792418
marc.collier@nortonrosefulbright.com
Ethan Glenn
Texas Bar No. 24101810
ethan.glenn@nortonrosefulbright.com
Kayla Ahmed
Texas Bar No. 24136691
kayla.ahmed@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701-4255
Telephone:     (512) 474-5201
Facsimile:     (512) 536-4598

*Counsel for Plaintiff Tesla, Inc.*

## CERTIFICATE OF SERVICE

I certify that, on August 4, 2026, this document was filed and served on all counsel of record via CM/ECF, in accordance with the Federal Rules of Civil Procedure.

Liara A. Silva
State Bar No. 24117923
lsilva@fritzbyrne.law
FRITZ BYRNE, PLLC
402 West Seventh St
Austin, Texas 78701
Telephone: (512) 476-2020
Telecopy: (512) 477-5267

AND

Todd A. Holleman (MI Bar P57699)
Admitted Pro Hac Vice Request
hollemant@millerjohnson.com
Miller Johnson
500 Woodward Ave., Suite 3600
Detroit, MI 48226
313-672-6939

*Attorneys for Angstrom Automotive Group, LLC*

/s/ Marc B. Collier
Marc B. Collier