UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

TESLA, INC.,

Plaintiff,

Civil Action No. 6:26-cv-00477

v.

ANGSTROM AUTOMOTIVE GROUP, LLC,

Defendant,

---

**BRIEF IN SUPPORT OF DEFENDANT ANGSTROM AUTOMOTIVE GROUP, LLC'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**

Defendant Angstrom Automotive Group, LLC ("Angstrom Automotive") states the following in support of its Motion to Compel Arbitration and to Stay Proceedings:

**Introduction**

Tesla Inc. ("Tesla") based this action on Tesla's General Terms and Conditions for Prototype or Production Parts or Services, dated August 31, 2021 (the "Terms"). The Terms contain a mandatory arbitration provision requiring the parties to submit any dispute between them to final and binding arbitration. (**Exhibit 1**, Section 20.7 of Tesla's General Terms and Conditions, redacted). In recognition of this requirement, Tesla told this Court that Tesla only sought retrieval of its tooling and that it "does not seek to litigate any other disputes between the parties." [Dkt. No. 1, Complaint, at ¶ 5]. Yet that is exactly what Tesla intends to do, disregarding both its prior representations to this Court and the very Terms on which Tesla based this action. The Court should compel Tesla to arbitrate all remaining disputes between the parties and stay proceedings pending that arbitration.

## Background

Tesla brought this action to retrieve tooling at a non-party's facility in Troy, Texas. Because Tesla lacks a contract with Angstrom Automotive's sister company in Texas, Tesla brought this action under the Terms between it and Angstrom Automotive. Tesla relied on the Terms in its complaint and its various filings before this Court. This Court in turn relied on the Terms in reaching factual and legal conclusions in Tesla's favor. There is no doubt at this point, per the Court's findings, that the Terms control the parties' relationship.

While the Terms permit Tesla to seek injunctive relief from this Court, the parties unambiguously agreed to submit all other disputes to arbitration. (**Ex 1** at § 20.7(a)-(d)). And the Terms broadly define "Dispute" to mean, collectively, "any dispute, controversy, difference or claim arising out of or relating to this contract, including the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it." (**Ex 1** at § 21.7). This broad definition certainly encompasses Tesla's remaining claims as well as any counterclaims Angstrom Automotive may have against Tesla. Per the Terms, these "Disputes" must be arbitrated.

In fact, the parties agreed to a specific procedure for resolving their disputes. First, the Terms require that the parties "shall endeavor to resolve through good faith negotiations" any dispute between them that relates to the Terms. (**Ex 1** at § 20.7(b)). If direct negotiations are successful within "a reasonable time," either party may request non-binding mediation to be conducted through the Juridical Arbitration and Mediation Services (JAMS). *Id.* Then, "[i]f the parties are unable to resolve a Dispute through good-faith negotiations within 60 days after commencing mediation," the parties *must* submit the dispute to "be resolved exclusively by final and binding arbitration conducted by the JAMS …." (**Ex 1** at § 20.7(c)). The Terms give the

arbitrator "full power and authority to determine issues of arbitrability and to interpret or construe the applicable provisions [of the Terms] and to fashion appropriate remedies for breaches hereof (including interim or permanent injunctive relief) …." *Id.*

Angstrom Automotive's filings have been limited to Tesla's request for injunctive relief. At no time did Angstrom Automotive knowingly waive its right to arbitrate Tesla's remaining claims (i.e., those not rendered moot by this Court's prior orders). In fact, Angstrom Automotive included this affirmative defense in its answer to Tesla's complaint. [Dkt. No. 15]. But Angstrom Automotive took Tesla at its word, limiting Angstrom Automotive's responses to the issues surrounding Tesla's request for injunctive relief because Tesla indicated that the parties would arbitrate their disputes following resolution of the tooling issue. But Tesla now indicates that it wants to litigate its other claims in this Court, directly contradicting Tesla's own statements to this Court as well was Tesla's own terms and conditions.

**Legal Standard**

The Federal Arbitration Act (FAA) provides that written arbitration agreements in "any maritime transaction or a contract evidencing a transaction involving commerce" "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "embodies the national policy favoring arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). The FAA provides "for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (citing 9 U.S.C. §§ 3-4).

Courts in the Fifth Circuit employ a two-step inquiry when determining a motion to compel arbitration under the FAA. *See Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d

1069, 1073 (5th Cir. 2002) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

The **first step** is to determine whether the parties agreed to arbitrate the dispute at issue. *Webb v. Investacorp., Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam). That inquiry asks both "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001) (per curiam) (citing *Mitsubishi*, 473 U.S. at 628, 105 S.Ct. 3346).

The **second step** is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id*. That inquiry must take into account the FAA's requirement that courts "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

**Argument**

**I. The Parties agreed to arbitrate the disputes at issue.**

A. <u>The Terms contain a valid and enforceable agreement to arbitrate.</u>

The Terms constitute a valid and enforceable contract between Tesla and Angstrom Automotive. There can be no dispute on this point because Tesla asserted this same point in prior filings in this Court and this Court relied on this conclusion in issuing injunctive relief in Tesla's favor. The only question is whether the Terms' arbitration provision (Section 20.7) is enforceable.

Under Section 2 of the FAA and California law, courts are to enforce agreements to arbitrate as any other contract, according to their terms. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011) (*Concepcion*); *McGill v. Citibank, N.A.*, 2

Cal.5th 945, 393 P.3d 85, 216 Cal. Rtpr.3d 627, 631 (Cal. 2017). "Because the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements," *Waffle House*, 534 U.S. at 294 (internal quotation marks omitted), when examining the scope of an arbitration agreement, "[a]s with any other contract dispute, we first look to the express terms [of the parties' agreement]." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the text is plain and unambiguous, that is the end of our analysis in this case because we "must rigorously enforce arbitration agreements according to their terms" under both the FAA and Nevada law. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 133 S.Ct. 2304, 2309, 186 L.Ed.2d 417 (2013) (internal quotation marks omitted); *see also Waffle House*, 534 U.S. at 294, 122 S.Ct. 754 ("While ambiguities in the language of the agreement should be resolved in favor of arbitration, ... we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated."); *State ex rel Masto v. Second Judicial Dist. Ct. ex rel. Cty. of Washoe*, 125 Nev. 37, 199 P.3d 828, 832 (2009) ("In interpreting a contract, we construe a contract that is clear on its face from the written language, and it should be enforced as written.").

Here, the parties unambiguously agreed that any dispute between them "shall be resolved exclusively by final and binding arbitration conducted by the JAMS in accordance with the then-current JAMS Streamlined Arbitration Rules & Procedures." (**Ex 1** at § 20.7(c)). Section 20.7(d) permits Tesla to seek "temporary, preliminary, or permanent injunctive relief, specific performance, or other equitable relief" outside of arbitration, but Section 20.7(c) unambiguously require Tesla to arbitrate all remaining claims against and disputes with Angstrom Automotive.

B. Tesla's claims fall within the scope of the parties' arbitration agreement.

The parties agreed to arbitrate "any dispute, controversy, difference or claim arising out of or relating to this contract, including the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it." (**Ex 1** at § 21.7). This broad definition encompasses Tesla's remaining claims against Angstrom Automotive: breach of contract, conversion, and trespass to chattels. Each of these claims qualifies as a "dispute, controversy, difference or claim arising out of or relating to [the Terms]" or as a "dispute regarding non-contractual obligations arising out of or relating to [the Terms]." *Id*. Besides, any dispute as to the arbitrability of these claims should be decided by the arbitrator in accordance with Section 20.7(c), which expressly provides the arbitrator with "full power and authority to determine issues of arbitrability and to interpret or construe the applicable provisions of [the Terms] …."

The Terms contain a valid and enforceable arbitration agreement between these parties, one broad enough to cover any dispute, controversy, difference or claim between them. Tesla's remaining claims against Angstrom Automotive all arise from or relate to this agreement or to non-contractual obligations related thereto. The Court should therefore grant this motion and enter an order staying proceedings and compelling Tesla to arbitrate its claims.

**II. No external legal constraints foreclose arbitration of Tesla's claims.**

When determining whether external legal constraints would preclude arbitration, courts generally apply ordinary state-law principles governing contract formation. *Webb*, 89 F.3d at 257. The usual defenses to a contract such as fraud, unconscionability, duress, and lack of consideration may be applied to invalidate the arbitration agreement. *See, e.g., Schneider Electric Building Americas, LLC v. International Mechanical Services, Inc.*, 2017 WL 11207326, *3 (W.D. Texas,

San Antonio Div., Jan. 27, 2017). Tesla will be unable to assert any of these defenses without contradicting its prior pleadings. Tesla will be unable to point to any other legal constraints that would render the arbitration provision unenforceable.

If a valid agreement is found, and there are no legal constraints external to the agreement that foreclose arbitration, arbitration is mandatory. The Court should grant this motion and enter an order staying proceedings and compelling arbitration.

**III. Angstrom Automotive has not waived its right to assert the arbitration provision.**

In response to this motion, Tesla may argue that Angstrom Automotive's participation in proceedings thus far waived its right to assert the Terms' arbitration provision now. Such an argument lacks merit. A party may waive arbitration where it knowingly relinquished the right to arbitrate by acting inconsistently with that right. *Garcia v. Fuentes Restaurant Management Services Incorporated*, 141 F.4th 671, 676 (5th Cir 2025). A party may act inconsistently with its right to arbitrate a dispute by substantially invoking the juridical process. *Id*. When the party moving to enforce arbitration is the defendant, "the court must assess whether the defendant … acted in such a manner that the law deems the defendant to have acquiesced to having the claims at issue adjudicated by means of court litigation rather than arbitration." *Global Advantech Resources Limited v. Brown*, 2026 WL 1483966, *8 (5th Cir. May 27, 2026). Determining whether a party waived its right to arbitrate is fact intensive. *Id*.

There is no bright-line rule as to what qualifies as "substantial invocation of judicial process," but courts have routinely imposed a high standard requiring substantial and continued participation in litigation. *Garcia*, 141 F.4th at 676; *Global Advantech*, 2026 WL 1483966, *8. For instance, answering a complaint and participating in discovery does not qualify as substantial invocation of juridical process, so long as the party moving for arbitration did not "shower" the

opposing party with interrogatories and discovery requests. *Garcia*, 141 F.4th at 677-679; *Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897–99 (5th Cir. 2005). Nor can filing a motion for summary judgment, *from a defensive posture*, be characterized as an invocation of judicial process. *Keytrade*, 404 F.3d at 897-98. Instead, a party must take some overt act signaling a known relinquishment of the right to arbitrate, such as stating in a joint status report that it did not intend to arbitrate the dispute. *Garcia*, 141 F.4th at 677-679.

On the other hand, a party may waive the right by failing to assert an arbitration agreement in either its answer or initial motions under Rule 12(b). *Global Advantech*, 2026 WL 1483966. In a recent decision, the Fifth Circuit affirmed the denial of a motion to compel arbitration where, over the course of three years, the defendants answered the complaint and filed two dispositive motions without asserting the right, engaged in merits-based discovery, and twice joined the plaintiff in requestion deadline extensions. *Id*. at 9-10.

Angstrom Automotive has not knowingly relinquished its right to arbitrate its disputes with Tesla by "substantially invoking the judicial process." Angstrom Automotive did not commence this action. Angstrom Automotive argued throughout that (1) Angstrom Automotive was not a proper party to this dispute and should not have been named to it; (2) this Court lacks personal jurisdiction over Angstrom Automotive because it was not a party to the underlying commercial transactions; and (3) that the Terms did not apply to Angstrom Aluminum Castings, LLC and was not triggered by the breaches of a nonparty to the Terms. Angstrom Automotive has been on the defensive, only taking action to avoid what it respectfully considers this Court's improper exercise of personal jurisdiction, misapplication of California law, and improper issuance of injunctive relief against a nonparty.

In other words, every action Angstrom Aluminum took was directed at showing that there is *no dispute* between it and Tesla. Angstrom Automotive has taken no overt action invoking the Court to decide the merits of Tesla's claims or Angstrom Automotive's potential counterclaims against Tesla, because Angstrom Automotive did not believe there existed a dispute between it and Tesla. The Court has concluded otherwise, at Tesla's request, and found that a dispute has arisen under the Terms. That dispute *must* be arbitrated in accordance with the Terms.

**IV. The Court should stay the claims against Angstrom Automotive pending arbitration.**

Under § 3 of the FAA, a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. When ruling on a motion to stay under § 3, courts must determine whether there is a written agreement to arbitrate and, if there is, whether any of the issues raised in litigation are within the reach of that agreement. *Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993). "If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause." *Id.*

As shown above, the valid and enforceable Terms include a valid and enforceable arbitration agreement. That arbitration agreement is extremely broad, encompassing "any dispute, controversy, difference or claim arising out of or relating to this contract, including the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it." (**Ex 1** at § 21.7). This definition encompasses Tesla's claims for alleged breaches of the Terms and for any harm caused by related non-contractual conduct. At the very least, the agreement is so broad that the Court should stay

proceedings to allow an arbitrator to decide which disputes fall under the agreement, as Fifth Circuit law and the Terms themselves require.

## CONCLUSION

For the preceding reasons, Defendant respectfully requests that the Court grant this Motion and enter an Order Compelling Arbitration and Staying Proceedings, along with any other relief the Court deems appropriate under the circumstances.

Respectfully submitted,

By: _*/s/Todd A. Holleman*_________________
Todd A. Holleman (MI Bar P57699)
*Pro Hac Vice* Admission
Miller Johnson
500 Woodward Ave., Suite 3600
Detroit, MI 48226
hollemant@millerjohnson.com
313-672-6939

**ATTORNEYS FOR DEFENDANT**